RICHARD E. BLAKER ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
(13564)
(13565)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued May 10—decision released August 8, 1989

*John J. Darcy,* for the appellant in the first case (plaintiff Edward A. Jennings).

*Aaron B. Schless,* for the appellants in the second case (plaintiff Dennis R. Andrasi et al.).

*Matthew B. Woods,* for the appellee in both cases (defendant Baker-Firestone Limited Partnership).

SHEA, J. The dispositive issue in these appeals is what effect an applicant's submission of ex parte evidence to a planning and zoning commission has upon an aggrieved party's burden to demonstrate, in an appeal to the Superior Court, that the commission acted illegally. We conclude that the applicant's ex parte communication relieved the aggrieved party of the initial burden of demonstrating that the commission acted illegally and shifted the initial burden to the applicant to demonstrate that the communication was harmless.

On November 11, 1986, the defendant Baker-Firestone Limited Partnership (Baker-Firestone) applied to the defendant Fairfield town plan and zoning commission (commission) for both a change of zone and a special permit for construction of multifamily condominium units. The land involved consisted of approximately 19.65 acres in the Southport section of Fairfield. Through the change of zone, Baker-Firestone sought the establishment of a "Designed Residence District #1" on land that was then zoned for single family dwellings on half acre and one acre parcels. Baker-Firestone simultaneously applied for a special permit to allow the construction of eighty-nine condominium units on the parcel of land.[1]

---

[1] Baker-Firestone also applied for and received a special permit for land excavation and fill. No appeal was taken from the granting of this permit.

The commission held public hearings on Baker-Firestone's applications on January 13, 1987, January 27, 1987, and February 24, 1987. At the January 13 public meeting, Aaron Schless, the attorney for a group of opponents to Baker-Firestone's applications, presented the commission with a protest petition, which, if valid, would have required the commission to approve the application for a zone change by a "vote of two-thirds of all the members of the commission." General Statutes § 8-3 (b).[2]

On February 2, 1987, James Wendt, a town planner, prepared an analysis of the petition submitted by the opponents of Baker-Firestone's applications. According to Wendt's calculations, more than 20 percent of the area of the land within 500 feet of the proposed development was represented by petition signers, and therefore, a two thirds vote of all the members of the commission was required to approve the proposed zone change.

On March 3, 1987, after the close of the public hearings, the commission received a letter from Andrew Garson, the attorney who represented Baker-Firestone. In the letter Garson disagreed with the commission staff's conclusion that the protest petition satisfied the requirements of § 8-3 (b). He specifically disagreed with the method by which the staff had calculated both the acreage owned by the petitioners and the total acreage within the 500 foot area surrounding the Baker-

---

[2] General Statutes § 8-3 (b) provides: "Such regulations and boundaries shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two thirds of all the members of the commission."

Firestone property. Garson offered his own calculations, the results of which indicated that 20 percent or more of the owners of the property within 500 feet of Baker-Firestone's property had not signed the petition, as required by § 8-3 (b). No copy of this letter was sent to Schless, as the attorney representing the opponents, by either Garson or the commission. Furthermore, no additional public hearing was scheduled to give the opponents of Baker-Firestone's applications an opportunity to refute Garson's claims.

On the same date, March 3, 1987, the commission held an executive session, during which it considered Baker-Firestone's zone amendment and special permit applications. The minutes of that meeting indicate that the commission's staff reported that a valid protest petition had been filed. The record does not indicate whether the commission members agreed with the staff's conclusion concerning the validity of the protest petition, or whether they later changed their minds after receiving the ex parte evidence from Garson. Nonetheless, the commission, six of whose seven members attended this meeting, voted four to two to approve Baker-Firestone's applications with certain modifications and conditions, including a reduction in the number of allowable units to seventy-three. On March 5, 1987, the commission received a letter from town attorney Roy Ervin, in which he opined that if a sufficient protest had been made and if only six of the seven commission members had voted on a proposed zone change, then five votes would be required to adopt such a change.

Fifteen plaintiffs commenced a zoning appeal against Baker-Firestone and the commission. The trial court granted Baker-Firestone's motion to dismiss as to all of the plaintiffs, except Richard Blaker and Edward Jennings, because the other plaintiffs had failed to furnish a proper bond as required by General Statutes

§ 8-8 (c). The court thereafter granted Baker-Firestone's motion to dismiss for lack of aggrievement as to Blaker, leaving Jennings as the sole remaining plaintiff. In addressing the merits of Jennings' appeal, the court concluded that Jennings had not demonstrated that the commission had acted illegally or arbitrarily, and, therefore, the court dismissed his appeal. These appeals followed.

In the first appeal, Jennings claims that the trial court erred in failing to find that the commission had acted arbitrarily and illegally in one or more of the following ways: (1) receiving ex parte evidence concerning the protest petition that had been filed; (2) voting only four to two to approve Baker-Firestone's application for a zone change, even though a valid protest petition had been filed; (3) approving Baker-Firestone's applications with conditions that rendered the approval invalid; and (4) approving a zone change that was not in harmony with the comprehensive plan of the town of Fairfield.

In the second appeal, the remaining plaintiffs other than Blaker claim that the trial court erred in determining that they had failed to satisfy the "bond or recognizance" requirement of § 8-8 (c). The remaining plaintiffs, including Blaker, also reiterate the claims made by Jennings in his appeal.

We find error with respect to Jennings' first claim and no error with respect to his remaining claims. Because we remand the case for further proceedings, we decline consideration of the separate issue raised by the remaining plaintiffs.

I

We first consider the effect of the ex parte communication on Jennings' burden to demonstrate that the commission acted illegally. We address together Jen-

nings' first two claims at this juncture, because Jennings and Baker-Firestone agree that if a valid protest petition had been filed, then a four to two vote would have been insufficient in this case to approve the zoning change.[3] See *Steiner, Inc.* v. *Town Plan & Zoning Commission,* 149 Conn. 74, 175 A.2d 559 (1961).

The trial court reached two conclusions concerning the ex parte communication. We disagree with both conclusions. First, the court held that the commission's receipt of Garson's letter was not improper, because the letter related only to "a procedural question of what number of affirmative votes were required to approve the application." Second, the court held that Jennings had the burden of proving that he was prejudiced by the commission's receipt of the ex parte evidence.

The trial court's first conclusion is contrary to our holding in *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 355 A.2d 21 (1974), in which we discussed the propriety of a planning and zoning commission's receipt of ex parte evidence. We stated that "[w]hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commis-

---

[3] Baker-Firestone maintains that the issue of the commission's receipt of ex parte evidence is not properly before this court because it exceeds the scope of the allegations in the administrative appeal complaint. Baker-Firestone relies upon the requirement in General Statutes § 8-8 (b) that "[t]he appeal shall state the reasons upon which it has been predicated . . . ." It is quite clear in this case, however, that the principal ground upon which the administrative appeal was based was the claim that a valid protest petition had been filed. The significance of the ex parte communication is limited to determining how the burden of proof upon the validity of the petition should be allocated. In any event, there is no indication in the record that Baker-Firestone seasonably objected to the admission of evidence concerning the ex parte communication. If it had done so, the trial court might well have permitted an amendment of the complaint to include allegations concerning the ex parte communication.

sion could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. 'This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . .' " (Citation omitted.) Id., 207–208. We noted further that planning and zoning commissions are entitled to technical and professional assistance in matters that are beyond their expertise, and that such assistance may be rendered in executive session. Id., 208. We held, however, that "[t]he use of such assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." Id.

While it recognized this standard, the trial court nonetheless held that *Pizzola* did not apply, because the ex parte evidence in this case pertained to a "procedural question." Our holding in *Pizzola* provides no such exception, however, especially where, as in the present case, the "procedural question" determines whether the commission's vote was sufficient to authorize the zone change. Applying the *Pizzola* standard to the present case, we conclude that the record amply supports Jennings' claim that the commission's receipt of the ex parte evidence was improper. Having so concluded, we must next decide whether that impropriety shifted the burden to the defendants to demonstrate that the ex parte communication did not prejudice Jennings. We hold that the burden was so shifted.

At the outset, we recognize that a party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily or illegally. *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 266, 455 A.2d 339

(1983); *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 157, 292 A.2d 893 (1972). We do not retreat from these holdings. Rather, we treat the present case in the same way that we have treated violations of General Statutes § 4-181,[4] in reviewing administrative appeals arising under the Uniform Administrative Procedure Act (UAPA). Those cases are instructive because of the similarities between administrative appeals pursuant to the UAPA and administrative appeals from the decision of a planning and zoning commission.

In *Martone* v. *Lensink,* 207 Conn. 296, 301, 541 A.2d 488 (1988), for example, we recently held that "once a violation of [§ 4-181] has been proved by the party seeking relief, the burden shifts to the agency to prove that no prejudice has resulted from the prohibited ex parte communication." Further, in *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 459, 521 A.2d 1040 (1987), we recognized that "[w]e would create a conundrum by imposing the burden of proving prejudice from an ex parte communication upon one challenging an agency decision, because an adjudicating official may not ordinarily be subjected to inquiry concerning the mental process used in reaching a decision. *United States* v. *Morgan,* 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 (1941). The agency usually is in a better position to ascertain the content of any communications with its employees than is a party outside the agency, who often must depend on suspicion or rumor."

---

[4] General Statutes (Rev. to 1987) § 4-181 provides: "Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. An agency member may communicate with other members of the agency, and may have the aid and advice of one or more personal assistants."

Similarly, we conclude that a planning and zoning commission and an applicant before it would likely possess better information concerning the content of any ex parte communications between them and the effect that such a prohibited communication might have had on the commission's decision. Thus, once it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision.

Baker-Firestone urges this court to declare that Jennings and the other opponents of its applications were not prejudiced by the commission's receipt of the ex parte evidence, because, in fact, it was correct in its assertion that the protest petition was invalid. The trial court made no finding upon the factual issue of the validity of the petition because the evidence necessary to resolve the conflict between the report of the commission's staff and the ex parte analysis submitted by the applicant was not presented. As an appellate court, we obviously cannot resolve such a disputed issue. In the trial court, the factual issue of the validity of the petition was adjudicated improperly because of the court's legal error in allocating the burden of proof on that issue to Jennings. To correct the impact of that erroneous ruling, a further hearing must be held to permit the defendants to demonstrate that Baker-Firestone's ex parte submission was not prejudicial. At that time the defendants may submit evidence to show that the ex parte communication did not prejudice Jennings, because the petition did not bear the required signatures or because of some other reason, and Jennings will have the opportunity to refute that evidence. Again, we note that Jennings and Baker-Firestone

agree that if a valid protest petition had been filed, then the commission's vote would have been insufficient to approve the zoning change. A necessary corollary is that if the petition were invalid, then the commission's vote in this case would have been sufficient.[5]

## II

We address Jennings' third and fourth claims at this juncture because, if the trial court on remand were to find that the ex parte communication was harmless, review of these additional claims would then be necessary. We find neither claim to be persuasive.

## A

The commission attached several conditions to its approval of Baker-Firestone's applications. Among those conditions, the commission required Baker-Firestone to submit revised site plans with an improved emergency access. Jennings claims that because of the impact on wetland areas, this condition will require further approval by the Fairfield conservation commission, the town's inland wetlands agency. Jennings further maintains that there is no indication that the conservation commission will approve the revised site plans, and therefore, the condition rendered the commission's approval invalid.

Baker-Firestone responds in two ways. First, it points out that nowhere in the commission's letter of approval is there any indication that the emergency access will require further action by the conservation commission, because the emergency access might not have to traverse wetlands at all.[6] Second, Baker-

[5] We reject Jennings' view that the occurrence of the ex parte communication necessarily rendered the commission's decision void. See *Martone* v. *Lensink,* 207 Conn. 296, 306, 451 A.2d 488 (1988).

[6] The only reference to an emergency access in the commission's decision is in paragraph three of the conditions: "Revised plan shall indicate

Firestone maintains that in any event, this court's holding in *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 278 A.2d 799 (1971), permitted the commission to condition its approval on future action by another agency. We dispose of this claim on the second ground raised by Baker-Firestone.

In *Lurie* v. *Planning & Zoning Commission,* supra, 307, we held that "where an exception or a special permit is granted and the grant is otherwise valid except that it is made *reasonably conditional* on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition." (Emphasis added.) Our holding was intended to achieve greater flexibility in zoning administration by avoiding stalemates between a zoning authority and other municipal agencies over which it has no control. Id. Nowhere did we intimate, therefore, that, in order to be valid, conditional approval requires evidence that the other agency will act favorably on the future request. Such a holding in the present case would require evidence of the probability of future approval before the conservation commission has had an opportunity to review the site plans as revised. Further, it would be contrary to the policy of allowing a planning and zoning commission "to make the first move and the decision as to the conditions under which it would approve the issuance of a permit . . . . This is so even though the project may subsequently fail to materialize because one or more of the conditions has for any reason not been met." Id. We conclude, therefore, that the phrase "reasonably conditional" in *Lurie* contemplates giving the other agency, over which a planning and zoning commission has no control, the

___

an improved emergency access to a standard which is satisfactory to Police and Fire officials and the Town Plan and Zoning Commission. However, thru road construction at Town standards, is not required."

opportunity to review the revised plans, thereby furthering the goal of cooperative action among municipal agencies, and that the record need not indicate whether the conservation commission is likely to approve the revised site plans.

## B

Finally, Jennings claims that the zone change constituted spot zoning, because it was not in harmony with the comprehensive plan of the town of Fairfield. We disagree.

This court has held that "spot zoning is the 'reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood.' " *Morningside Assn.* v. *Planning & Zoning Board,* supra, 161. Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. Id. The comprehensive plan is to be found in the scheme of the zoning regulations themselves. *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* 165 Conn. 533, 542, 338 A.2d 490 (1973).

Jennings' spot zoning claim consists of three parts. First, he claims that the applicable special permit provision of the Fairfield zoning regulations must be considered when determining whether the zone change is in harmony with the town's comprehensive plan, because this provision is an important aspect of the town's comprehensive plan. See Fairfield Zoning Regs. § 25.5.4.[7] Second, he claims that this special permit pro-

---

[7] Fairfield Zoning Regulations § 25.5.4 provides: "CONFORMANCE TO PLAN OF DEVELOPMENT. The special permit use, site plan and architectural design shall be in conformance with the purpose and intent of any plan of development adopted by the town plan and zoning commission for the area in which the special permit use is to be located."

vision incorporates the Fairfield Master Plan (master plan) by reference, and therefore, the zone change must also be in harmony with the master plan. Finally, he maintains that the zone change is inconsistent with the master plan, and therefore with the comprehensive plan, because there was no compliance with the master plan directive that, for a zone change, there be a "fully demonstrated need for such type of land use." Fairfield Master Plan, Part II, § 1.3.2.

Assuming Jennings is correct concerning the first two parts of his argument; cf. *First Hartford Realty Corporation* v. *Plan & Zoning Commission,* supra, 542 (master plan merely advisory); we disagree with his assertion concerning the third part. At the public hearings on the applications, Baker-Firestone's representatives testified about the need for the proposed land use. Baker-Firestone's representatives testified that Fairfield currently had a limited market of relatively affordable housing for young married couples and "empty nesters," and that the condominium development would provide more affordable means of housing than would single family development. This evidence supports a finding by the commission of a "fully demonstrated need for such type of land use," and the commission members were entitled to rely upon their own knowledge of the area to confirm the facts to which Baker-Firestone's representatives had testified. *Primerica* v. *Planning & Zoning Commission,* 211 Conn. 85, 97–98, 558 A.2d 646 (1989). Having made such a determination, the commission could reasonably have concluded, as it did, that "[Baker-Firestone's] proposal is consistent with the Master Plan." We find further support for the commission's finding in the portion of the master plan that discusses the planning development policy of Hulls Highway, the area involved in the present case.[8] Section 2.5 of the master plan states that

---

[8] Jennings does not challenge Baker-Firestone's assertion that the land for the proposed development is situated in the Hulls Highway area.

"[t]he residential diversity in the [Hulls Highway] area ranges from 2 to 12 dwelling units per acre with up to 500 dwelling units within a ¼ mile radius." Thus, it appears that the specific use approved of in the present case, seventy-three condominium units on 19.65 acres of land, falls within the density range contemplated by the town's master plan. The trial court, therefore, correctly concluded that the zone change was in harmony with the town's comprehensive plan.

There is error in part, the judgment is set aside with respect to the ex parte communication and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.