RICHARD H. BLAKER ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
(14188)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and F. X. HENNESSY, Js.

Argued March 21—decision released June 4, 1991

*Matthew B. Woods,* for the appellant (defendant Baker-Firestone Limited Partnership).

*John J. Darcy,* for the appellee (plaintiff Edward A. Jennings).

*Christopher J. Smith,* for the appellees (plaintiff Dennis R. Andrasi et al.).

SHEA, J. The defendant Baker-Firestone Limited Partnership (Baker-Firestone) appeals from the judgment of the trial court, *Dean, J.,* sustaining the plaintiffs' zoning appeal, which judgment was rendered after we vacated in part an earlier judgment of the trial court, *Stodolink, J.,* and remanded the case for further proceedings. See *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 562 A.2d 1093 (1989) (*Blaker I*). Baker-Firestone claims that the trial court, *Dean, J.,* exceeded the scope of our remand order, and, moreover, substituted its own judgment for the judg-

ment of the defendant planning and zoning commission of the town of Fairfield (commission), by determining that a protest petition filed by the plaintiffs was valid. We disagree with both contentions, and affirm the judgment sustaining the appeal.

The underlying facts of this case are set out fully in our earlier opinion, but we summarize them briefly. See *Blaker I,* supra, 473–76. Baker-Firestone applied for a zone amendment in order to build multifamily condominiums in Fairfield. The plaintiffs, fifteen local property owners,[1] filed a protest petition with the commission on the second of three days of public hearings. After the conclusion of the public hearings, Baker-

---

[1] The zoning appeal was filed by fifteen property owners, Richard H. Blaker, Edward A. Jennings, Dennis R. Andrasi, Gerard A. and Sharon Etzel, Sally P. Jennings, Karen P. Maloney, Judith A. and Robert J. Pustell, Robert L. Richards, Roberta G. and Thomas L. Springall, Charles R. Sprowl, Jr., and Gwendolyn L. and Alfred N. Nolan. The trial court, *Burns, J.,* and, in a second order, *Gerety, J.,* dismissed the appeals of all the plaintiffs except Edward Jennings. See *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 472, 562 A.2d 1093 (1989) (*Blaker I*). The other property owners reserved the right to appeal after Jennings' claim was decided. When the trial court, *Stodolink, J.,* decided against Jennings' appeal on the merits, all parties appealed to the Supreme Court; in their appeals, the other parties contested, as well as the final decision on the merits, the earlier decisions to dismiss their zoning appeals. Id., 476. We reversed the decision with respect to Jennings' appeal on the merits, and never reached the issue of the propriety of the court's dismissal of the other property owners' claims. Id. Apparently, however, counsel for all the original plaintiffs, including counsel for the dismissed property owners, participated without objection at the remand hearing, and all parties, including the dismissed property owners, have filed briefs and argued as appellees in the present appeal brought by Baker-Firestone now before this court. This time, however, the dismissed property owners have not challenged the dismissal of their zoning appeals. Because their actions were dismissed, and they do not now appeal those dismissals, their arguments on the merits of this case are legally irrelevant. In any event, their arguments are similar to those advanced by Jennings. Even had they cross appealed their dismissals, however, we would have no need to reach the issue of the propriety of the dismissals, since we are affirming the judgment rendered by the trial court, *Dean, J.,* which grants the dismissed property owners, as well as Jennings, all the relief they sought.

Firestone sent an ex parte letter to the commission setting forth its contention, never previously raised, that the petition did not meet the requirements of General Statutes § 8-3 (b).[2] Thereafter, the commission at an executive session approved Baker-Firestone's application after a four to two vote, simply noting: "[T]he staff reported that a valid protest petition was filed." The plaintiffs appealed to the Superior Court, claiming, inter alia, that "(1) a protest petition sufficient to trigger the majority vote (two-thirds) provisions of C.G.S. § 8-3 (b) was filed; (2) the Commission failed to meet that requisite majority when it approved Baker's application." The court, *Stodolink, J.*, never explicitly decided these issues, but focused instead on the plaintiffs' further claim that the commission improperly considered the ex parte communication submitted by Baker-Firestone after the close of public hearings.[3] The court, in dismissing the appeal, concluded that the com-

---

[2] General Statutes (Rev. to 1985) § 8-3 provides, in pertinent part: "ESTABLISHMENT AND CHANGING OF ZONING REGULATIONS AND DISTRICTS. ENFORCEMENT OF REGULATIONS. CERTIFICATION OF BUILDING PERMITS AND CERTIFICATES OF OCCUPANCY SITE PLANS. DISTRICT FOR WATER-DEPENDENT USES. (a) Such zoning commission shall provide for the manner in which regulations under section 8-2 and the boundaries of zoning districts shall be respectively established or changed. No such regulation or boundary shall become effective or be established or changed until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard. . . .

"(b) Such regulations and boundaries shall be established, changed or repealed only by a majority vote of all the members of the zoning commission, except as otherwise provided in this chapter. If a protest against a proposed change is filed at or before a hearing with the zoning commission, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the commission."

[3] The trial court also considered various other issues raised in the appeal, particularly those relating to the merits of the commission's decision.

munication was not improper and that the plaintiffs had the burden of proving prejudice, which they had not sustained. From that judgment, on the grant of certification, the plaintiffs appealed. This court vacated the judgment in part, holding that the ex parte communication was improper and that the burden of proving lack of prejudice rested on the defendants. *Blaker I,* supra, 476–81.

## I

In our decision in *Blaker I,* we, like the trial court, focused on the issue of the ex parte communication.[4] We were aware that "the principal ground upon which the administrative appeal was based was the claim that a valid protest petition had been filed"; id., 477 n.3; because it was undisputed that "if a valid protest petition had been filed, then a four to two vote would have been insufficient in this case to approve the zoning change." Id., 476–77; see *Steiner, Inc.* v. *Town Plan & Zoning Commission,* 149 Conn. 74, 175 A.2d 559 (1961). When a sufficient protest petition has been filed, § 8-3 (b) provides that a zone change "shall not be adopted except by a vote of *two-thirds of all the members of the commission.*" (Emphasis added.) We expressly declined to rule on the validity of the petition, however, because "[t]he trial court made no finding upon the factual issue of the validity of the petition . . . [and] [a]s an appellate court, we obviously cannot resolve such a disputed issue." *Blaker I,* supra, 480. Instead, we declared that "the factual issue of the validity of the petition was adjudicated improperly because of the court's legal error in allocating the burden of proof on that issue to Jennings." We held that the trial court's conclusion, that the plaintiffs had failed to prove that the commission's implicit rejection of the petition's

---

[4] This court also considered the issues raised concerning the merits of the zone change and affirmed the trial court's decision as to those. *Blaker I,* supra, 481–85.

validity had been procured through the submission of improper ex parte evidence, was tainted by its erroneous allocation to Jennings of the burden of proof with respect to prejudice. Thus, while we recognized that the petition's validity remained the key issue in the case, we assumed, as did all parties, that the commission's implicit rejection of its validity was based upon its consideration of the Baker-Firestone communication.

Accordingly, we ordered: "A further hearing must be held to permit the defendants to demonstrate that Baker-Firestone's ex parte submission was not prejudicial. At that time the defendants may submit evidence to show that the ex parte communication did not prejudice Jennings, because the petition did not bear the required signatures or because of some other reason, and Jennings will have the opportunity to refute that evidence." Id., 480. Then, after rejecting Jennings' other claims that the commission's approval was contrary to law, we concluded: "There is error in part, the judgment is set aside *with respect to the ex parte communication* and the case is remanded to the trial court for further proceedings in accordance with this opinion." (Emphasis added.) Id., 485.

According to Baker-Firestone, the only issue on remand was the prejudicial impact of the ex parte communication. Thus, once Baker-Firestone had vindicated Judge Stodolink's decision by demonstrating that the letter had no prejudicial effect, the judgment dismissing the appeal would be effectively reinstated. We disagree with this interpretation of our remand.

It is manifest that the central issue remaining after Judge Stodolink's decision was the validity of the petition, for, if the petition *was* valid, the vote was inadequate, the approval ineffective, and the appeal's success assured. Jennings' purpose in challenging the ex parte

communication was to remove any basis for the commission's implicit finding that the protest petition was invalid. If the plaintiffs had never raised the issue of the ex parte communication they would still have been entitled to challenge the adequacy of the vote by asserting the validity of the petition. It is absurd to suggest that we would foreclose the plaintiffs from pursuing a major issue simply because a trial court error led them to pursue a successful appeal on a related subordinate issue. On the contrary, we invited Baker-Firestone to present evidence with respect to the petition's validity so that the validity of the petition could be determined on its merits.

## II

At the remand hearing, Baker-Firestone steadfastly refused to address the petition's validity. Instead, it offered testimony by each living member of the commission who had voted.[5] Each commission member testified that he had never seen, heard of, or been aware of the ex parte letter. Thus, Baker-Firestone insisted that it had adequately proved an absence of prejudice and that Judge Stodolink's judgment should be reinstated. It stood by its interpretation of the scope of the remand order even when the trial court, *Dean, J.,* permitted the plaintiffs to cross-examine the members of the commission with regard to their own views of the petition's validity and their recollections of what transpired at the executive session.[6]

---

[5] One member of the commission, Martin Weiss, had died prior to the hearing.

[6] Prior to the remand hearing, both parties had conducted depositions of the commission members and of James Wendt, the town planner who had advised the commission that the town staff believed the petition to be valid. During the course of the depositions, the plaintiffs' counsel realized that the commission had *not* rejected the petition's validity, but had erroneously believed that a four to two vote would be adequate for approval even if the petition were valid.

The trial court, *Dean, J.,* reviewed the minutes of the commission's executive session and perceived that the record did not indicate whether the peti-

Cross-examination revealed that the commission had never determined explicitly the petition's validity. Instead, the commission had decided to take a vote on the zone change, because a sufficient vote would have made it unnecessary to consider that issue. When the vote was four to two, the commission members, believing that such a vote was adequate for approval even if the petition was valid,[7] approved the application and did not investigate further the issue of its validity, although they were informed two days later by the town counsel that five votes were necessary to pass the application in the face of a valid petition.

An administrative appeal "shall be confined to the record." General Statutes § 4-183 (i); see *Levinson v. Board of Chiropractic Examiners,* 211 Conn. 508, 529–30, 560 A.2d 403 (1989). The only exception is that when "alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court." General Statutes § 4-183 (i). Thus, the court was entitled to take evidence with respect to the prejudicial effect of the ex parte submission, a "procedural irregularity." See *Martone v. Lensink,* 215 Conn. 49, 51–52, 574 A.2d 803 (1990). Accordingly, our remand was intended to provide the defendants with an oppor-

---

tion's validity had ever been decided. The court therefore permitted the plaintiffs' counsel to cross-examine the commission members testifying for Baker-Firestone with respect to whether the commission had in fact admitted or rejected the petition's validity.

[7] The commission had seven members, but one was absent, so that there were only six members present at the executive session. The chairman assumed that a favorable vote of two thirds of the members present (i.e., four favorable votes) would be enough even if the petition was valid under General Statutes § 8-3 (b). Instead, a favorable vote of two thirds of the members, present or not (i.e., five favorable votes), would have been required to approve the application. See *Blaker I,* supra, 477; *Steiner, Inc. v. Town Plan & Zoning Commission,* 149 Conn. 74, 175 A.2d 559 (1961).

tunity to show that the ex parte communication had not been prejudicial with respect to the determination that the protest petition was invalid, which we assumed the commission had made on the basis of Baker-Firestone's letter. We suggested that such lack of prejudice might be demonstrated by proving that the petition did not contain a sufficient number of signatures by property owners as required by § 8-3 (b), but also stated that "some other reason" might be shown to counteract the presumption of prejudice arising from the ex parte letter. The defendants chose to present no evidence concerning the validity of the petition, but limited their presentation to proof of another ground for lack of prejudice, the assertions of the commission members that they were not aware of the Baker-Firestone letter. Thus, they relinquished the opportunity afforded to contest the validity of the petition. They could have pursued such an attack in addition to the ground they did present.

The trial court properly recognized that "[a] substantial injustice would occur if the remand were limited to the ex parte communication in that the [plaintiffs] . . . would be barred from having their claim concerning the vote reviewed" and that "[i]t is inconceivable that the Supreme Court intended that result." We had set aside the judgment upholding the commission's approval of the zone change, leaving the plaintiffs' appeal unresolved. Before a judgment disposing of the appeal could be rendered, it was essential first to resolve the central issue of the validity of the petition. Our remand "for further proceedings in accordance with this opinion" was never intended to authorize the dismissal of the appeal without a determination of that issue.

The trial court was authorized to determine the issue of the validity of the petition, provided that the evidence

before it was sufficient for that purpose. In this case, it was undisputed that the only evidence before the commission upon which it could have evaluated the petition's validity was a document prepared by the town planner, James Wendt, and Wendt's own testimony that he and the staff believed the petition to be valid. There was no evidence in the record contradicting the subordinate facts that formed the basis of Wendt's opinion. Without contradictory evidence in the record to support a finding of invalidity, the commission, and therefore the court, could have reached only one reasonable conclusion: that the petition was valid.

Baker-Firestone complains that the trial court in effect shifted to it the burden of proving the petition's invalidity, in essence creating a presumption of validity in any petition purporting to qualify as a protest petition under § 8-3 (b). The plaintiffs contend that the trial court found as a fact that the commission had validated the petition, and that therefore the burden was properly upon Baker-Firestone to challenge the commission's determination with respect to the petition's validity. We disagree with both contentions.

The opinion of the trial court, *Dean, J.,* may be read to suggest that the court was finding, as a fact, that the commission had actually decided the petition was valid. Such a conclusion, however, would not have adequate support in the record of the remand hearing. We construe the opinion to state, rather, that because there was no contradictory evidence in the record, the commission would have had no choice but to recognize the petition's validity.

A protest petition is not presumptively valid. A commission may conclude either that such a petition is valid or that it is invalid. Since its conclusion that a petition is invalid is immaterial unless the commission goes on to rule in favor of the application that the petition con-

tested, that conclusion will usually be challenged in the context of a challenge to the commission's ruling in favor of the application. The party challenging an administrative decision always bears the burden of demonstrating that the decision was erroneous or improperly made. General Statutes § 4-183 (j); *State* v. *Ward,* 172 Conn. 163, 171, 374 A.2d 168 (1976) (presumption of accuracy in factfinding of governmental officials); *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 205, 491 A.2d 1058 (1985) (presumption of regularity in administrative proceedings). Thus, one who appeals a favorable ruling by claiming that the petition was valid must bear the burden of proving its validity and, therefore, that the commission acted improperly because the petition was valid.

Even when one party has the burden of proof with respect to an issue, however, that party must prevail if the only evidence presented[8] with respect to that issue is favorable to his position and if that evidence is not contradicted. One who presents no countervailing evidence bears the risk that the plaintiff's proof will be persuasive. The commission was not required to believe Wendt any more than any factfinder is obligated to believe any expert. But it could not *reasonably* have rejected Wendt's opinion and factual statements *in the absence* of any contradictory evidence with respect to the petition's validity. The trial court was also entitled to infer, from Baker-Firestone's failure at the remand hearing to produce any evidence with respect to the

---

[8] The plaintiffs themselves never presented any evidence to the commission. They filed a petition and then left it to the zoning staff to evaluate the petition's basis and determine whether it was "valid" under General Statutes § 8-3 (b) so as to trigger the two-thirds vote requirement contained in that statute. Baker-Firestone appears to contend that unless petitioners file maps, certified copies of deeds and the like in support of their petition's validity, the petition should always be rejected as invalid under § 8-3 (b). The statutes contain no such requirement, and, indeed, leave it to the local commission to set its own requirements. General Statutes § 8-3 (c).

petition's validity, that no evidence favorable to Baker-Firestone existed. Cf. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960).

Baker-Firestone claims that our decision denies it its day in court. It maintains that it was denied an opportunity to challenge the petition because it could not submit evidence to the executive session of the committee and because the petition was filed towards the end of the three day public hearing, too late to permit a full investigation into the sufficiency of the petition's signatures. The record indicates, however, that the petition was filed on the second day of the public hearing, at least three weeks before the last day of the hearing, and that seven more days intervened between the public hearing and the executive session.[9] Baker-Firestone never presented any evidence at the public hearing on the issue of the petition's validity and never sought to reopen the hearing on that issue, although the ex parte letter indicates that it was aware that the zoning commission's staff believed the petition to be valid. It never demanded that the parties be permitted to present evidence with respect to the petition's validity, but took it upon itself to send an ex parte letter to the commission which was received by Wendt on the very day of the executive session. At the remand hearing, Baker-Firestone had another opportunity to present evidence demonstrating the petition's invalidity, but, as a matter of strategy, chose not to do so. The trial court's decision to determine the validity of the petition on the evidence before it was an appropriate interpretation of the remand order and did not deprive Baker-Firestone of its right to be heard.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[9] Public hearings were held on January 13, January 27 and February 24, 1987, and the executive session took place on March 3, 1987.