[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, John Stevens, Mary Stevens, and Ruth Holle, have appealed pursuant to Section 8-8 of the Connecticut General Statutes, the decision of the defendant Planning and Zoning Commission of the Town of Westport to change the zoning designation of a parcel of land owned by the defendant Town of Westport from, "Residence AAA" to "Residence AA," based on an application for a change of zone that was filed by defendant Katherine Barnard, the Director or the Planning and Zoning Commission, on behalf of the Town or Westport and the Planning and Zoning Commission.
The following facts are pertinent to a determination of this appeal.
The defendant Town of Westport ("Town") is the owner of a twenty-two acre parcel of real property ("the subject property" located to the north of Long Shore Park and to the east of the Saugatuck River. The subject property which contains eight residential lots (all of which are less than one acre in size), is presently being used as a municipal park.[1] The plaintiffs, John Stevens, Mary Stevens, and Ruth Holle, are owners of residential lots that either abut or are within one-hundred feet of the subject property.
On May 17, 1991, the PZC, through its director, Katherine Barnard, filed an application to amend the comprehensive town plan and change the zoning designation of the subject property from "Residence AAA" zone to "Residence AA" zone.[2] The application designates the applicant as "Katherine Barnard for the Town of Westport Planning Zoning Commission." The PZC held a public hearing on June 24, 1991. On September 16, 1991, the PZC voted four to three (4-3) to approve the application. CT Page 4694 Notice of the PZC's decision was published in the Westport News on September 27, 1991.
By request dated October 1, 1991, twenty electors of the Town requested that the Town's Representative Town Meeting ("RTM") review the PZC's approval of the change of zone at the next RTM.[3] On October 22, 1991, the RTM voted on the issue of whether the PZC's change of zone should be reversed, and failed to gather the number or votes needed to reverse the PZC's action.[4] The Plaintiffs now appeal the PZC's decision to grant the change of zone.
JURISDICTION
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which create that right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Appeals from zoning commissions are taken pursuant to Connecticut General Statutes 8-8.
1. Timeliness and Service
A party commencing an appeal must do so by commencing service of process within fifteen days from the date that notice of the decision was published. General Statutes 8-8(b). The appeal shall be returned to the court in the same manner and within the same periods of time as prescribed for civil action brought to that court. Id. Notice of such appeal shall be given by leaving a true and attested copy of the process with or at the usual place of abode of the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. Connecticut General Statutes 8-8(e). Publication of the notice of decision must be completed within fifteen days following the decision. Connecticut General Statutes 8-7d.
The PZC approved the application for a change of zone on September 16, 1991. Notice of the decision was published in the Westport News on September 27, 1991. The plaintiffs then exercised their right to appeal to the Westport RTM on October 1, 1991. On October 22, 1991, the RTM voted to uphold the PZC's action. CT Page 4695
On October 31, 1991, the plaintiffs commenced this action by serving process upon Nancy Gilchrist, the Chairperson of the PZC, and Joan Hyde, the Municipal Clerk of the Town of Westport. Process was served on Katherine Barnard, the Director of the PZC, on November 1, 1991.
In the present case, the plaintiffs did not commence service of process within fifteen days from the date that notice of the PZC's decision was published because they exercised their right to appeal to the Westport RTM. Section C26-4 of the Westport Code provides in pertinent part:
 Any action by the Planning and Zoning Commission . . . fixing or changing the boundary of any zoning district shall be subject to review by the [RTM] . . .
 D. Nothing contained in this section shall impair or limit any right or appeal to the court conferred by the General Statutes. Where review by the [RTM] has been requested, the period within which any such appeal may be taken shall commence at the close of the [RTM] at which such resolution was voted.
It follows that the plaintiffs have timely commenced the present action having commenced service of process within fifteen days from the date that the RTM voted to uphold the PZC's action.
2. Aggrievement
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and Zoning Commission, 219 Conn. 303,307, 592 A.2d 953 (1991). Section 8-8(b) provides in pertinent part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." Connecticut General Statutes 8-8(a); Smith v. Planning and Zoning Board, 203 Conn. 317,321, 524 A.2d 1128 (1987).
In the present case, the plaintiffs are statutorily CT Page 4696 aggrieved, as the testimony and documentary evidence which was submitted at the January 13, 1993 hearing on appeal established that the plaintiffs own interests in real property that either abut or are within one hundred feet of the subject property.
The plaintiffs by this appeal raise two major challenges to the action of the PZC claiming that;
1. The PZC's decision to grant the change of zone is improper because it was based on the defendants' allegedly improper motive of maximizing the Town's potential profits from the sale of the subject property; and
2. that the change of zone is improper because the Director of the PZC, whose name appears on the application for the change of zone, participated in the meeting at which the PZC approved the change of zone.
A trial court may grant relief on appeal from a decision of an administrative agency when the agency has acted illegally, or arbitrarily, or has abused its discretion. Caserta v. Zoning Board of Appeals, 28 Conn. App. 256, 258, 610 A.2d 713 (1992). the burden of proof to demonstrate that the zoning authority acted improperly is upon the plaintiff. Pleasant View Farms Development, Inc. v. Zoning Board of Appeals, 218 Conn. 265,269-70, 588 A.2d 1372 (1991).
Upon appeal, the trial court reviews the record before the commission to determine whether it has acted fairly or with proper motive upon valid reasons. Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 582 (1991). In so doing, the court may not substitute its judgment for that of the commission. Friedman v. Planning and Zoning Commission,222 Conn. 262, 268 608 A.2d 1178 (1992). If the court concludes that any one of several reasons submitted by the commission for its action is reasonably supported by the record, then the commission's action must stand. Id.
A. Change of Zone
The plaintiffs argue that the PZC's approval of the application for the zoning changes violates Connecticut General Statutes 8-2 and 8-3 because such a change is inconsistent with the Town's comprehensive plan of development.[5] The plaintiffs contend that the PZC approved the zone change for the CT Page 4697 improper purpose of increasing the potential number of building lots on the subject property in order to maximize the Town's potential profits upon the future sale of the subject property to private parties. The plaintiffs further contend that the Town intends to use the potential profits which would be generated by the sale of the subject property to offset a monetary court judgment that recently entered against the Town.
In response, the defendants argue that the PZC's action was legal, proper and within the PZC's broad discretion. The defendants also argue that the zoning change is consistent with the Town's comprehensive plan of development.
When re-zoning properties, a zoning commission acts in its legislative capacity. (Citation omitted.) Primerica v. Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646 (1989). Courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers." (Citations omitted.) Id. The test for an action of a zoning commission approving a zone change is: (1) whether the zone change is in accord with the Town's comprehensive plan of development (pursuant to General Statutes 8-2); and (2) whether the zone change is reasonably related to the normal police power purposes enumerated in Connecticut General Statutes 8-2. First Hartford Realty Corporation v. Planning Zoning Commission, 165 Conn. 533,541, 338 A.2d 490 (1973). "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. PZC, supra, 96.
The PZC's reasons for granting the change of zone, as stated in the PZC's actual decision, are as follows:
1. The rezoning does not interfere with any of the recreation facilities at Long Shore Park;
2. This area offers limited parks and recreation opportunities . . . because of its steep slopes and wooded character. It is not easily accessible to the public.
3. The rezoning makes the existing lots in the Vista Terrace/Waterside Terrace area less CT Page 4698 non-conforming in size.
4. The coastal resources of the site will not be impacted by any proposed development as a result of the rezoning.
(ROR #39, p. 2).
The plaintiffs contend that the court should consider the PZC's explanatory statement in support of the application for the change of zone (dated May 22, 1991) in order to ascertain the PZC's reasoning. The explanatory statement provides that:
 The proposed development is (a) consistent with the ability of the soil terrain and coastal resources to handle, (b) consistent with the development in the adjacent areas along Manitou Court, Manitou Road, Ferry Land and Compo Road South, and (c) will allow for an increase in the tax base in order to help insure the Town's future financial stability.
Generally, lay members of a commission may rely on their personal knowledge concerning matters readily within their competence such as traffic congestion, street safety and local property values. (Citations omitted.) Feinson v. Conservation Commission, 180 Conn. 421, 427, 429 A.2d 910 (1980). The commission may also rely on material nonrecord facts that are within its special knowledge and experience or that it has learned through investigation, but in so doing, it must allow an adversely affected party an opportunity to rebut at an appropriate stage in the proceedings. Id., 428-29.
After considering opposition opinions from members of the community (ror #28), the PZC concluded that the change of zone would not interfere with the recreational facilities at Long Shore Park (ROR #23), and that the subject property offered limited recreational opportunities because of its steep topography. (ROR #40). The PZC is entitled to rely on its personal knowledge with respect to the subject property's suitability for recreational use and the effect of the change of zone on Long Shore Park. Further, the PZC's first two reasons are supported by other evidence contained in the record, such as: (1) the opinions of various town departments[6]; a report by CT Page 4699 the Department of Environmental Protection[7]; and (3) the Town's existing conditions map (which contains topographical information). (ROR #47).
The PZC's third reason for granting the change of zone was that rezoning would make the lots which are located on the subject property less nonconforming in relation to the surrounding properties. "[N]onconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit." (Citation omitted.) Hyatt v. Zoning Board of Appeals, 163 Conn. 379, 383-84,311 A.2d 77 (1972).
In the present case, the subject property, which was zoned "Residence AAA" (allowing for lots with a two acre minimum area) and which contains eight nonconforming residential lots (all of which are less than one acre in size), was rezoned to "Residence AA" (lot sizes between 1.0 and 1.99 acres). This change of zone to "Residence AA" effectively reduces the nonconformity of the lots which are located on the subject property.
Also, a memorandum prepared by the Town's planning assistant states that 70.5% of the lots within 1000 feet of the subject property are between 1.0 and 1.99 acres in size, and thus are fully consistent with the "Residence AA" zone requirements, and 91.8% of the surrounding lots are less than two acres in size. (ROR #30). Thus, the change of the zoning designation of the subject property is in accord with the comprehensive plan of the Town of Westport. (ROR #48).
The fourth reason given by the PZC for granting the change of zone is that coastal resources would not be impacted by future development of the subject property. Support for this reasoning could be found in a report from the Department of Environmental Protection ("DEP"). (ROR #22). In that report, the Assistant Commissioner of the DEP stated that he reviewed the proposed zone change and found it to be consistent with the applicable policies and standards of the Connecticut Coastal Management Act and the Town of Westport's Municipal Coastal Program. Id. The Assistant Commissioner also commented that "the increase in density which would result from the zone change does not appear likely to adversely affect coastal resources on or adjacent to the property." Id.
Thus, all of the PZC's reasons for granting the change of CT Page 4700 zone, as stated in their decision, are supported by the record. Further, the PZC's reasons for granting the change of zone are reasonably related to the police power purposes enumerated in General Statutes 8-2 because: (1) the PZC acted to regulate the density of the population and the location and use of buildings, structures, and land for residential purposes; (2) the PZC acted to encourage the most appropriate use of land throughout such municipality; and (3) the PZC acted to encourage the development of housing opportunities in the community. The PZC's decision to grant the change of zone satisfies both prongs of the test enunciated in First Hartford Realty Corporation v. Planning 
Zoning Commission, supra.
The plaintiffs argue that the court should consider the PZC's explanatory statement in support of the application for the change of zone, in order to find that the PZC acted improperly. That explanatory statement (ROR #9) was prepared by the PZC staff as part of a pre-public hearing presentation to the PZC. (The explanatory statement as dated May 22, 1991. The public hearing was held on June 24, 1991). The plaintiffs argue that the court should examine a clause in this statement which states that the change of zone "will allow for in increase in the tax base in order to help insure the Town's future financial stability. . . ," and consider this to be an improper purpose. However, it must be noted that this reason was not incorporated into the PZC's final decision, which was issued on September 27, 1991 (ROR #39, p. 2), and thus can not be considered as an official reason in support of the change of zone. "[W]here a zoning commission has formally stated the reasons for its decision, the court should not do behind that official collective statement of the commission." DeMaria v. Planning 
Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105 (1970). "It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." Id.
The explanatory statement (ROR #9), dated May 22, 1991, was prepared by the PZC's staff as part of a presentation to the PZC. Therefore, the statement is not part of the actual decision to approve the zone change (which was issued on September 16, 1991), and thus, does not represent the official reasons for the PZC's final collective decision. Furthermore, it is sufficient that the reasons given by the PZC for its decision are supported by the record. CT Page 4701
B. Exparte Communications from the Director of the PZC
The plaintiffs argue that defendant Katherine Barnard, the Director of the PZC ("Barnard"), improperly participated in pre-public hearing PZC meetings and post-public PZC meetings in violation of General Statutes 8-3(a), 8-3(c) and 8-7d. The plaintiffs contend that Barnard, in her dual capacity as Director of the PZC and named applicant for the change of zone (on behalf of the defendant Town), was not entitled to participate in any PZC meetings that were not open to the public. The plaintiffs also argue that the application was improperly submitted because Barnard has no authority to seek a change of zone for Town property.
In response, the defendants argue that a zoning commission has the power to initiate its own proceedings for a change of zone. The defendants also argue that any pre-public hearing or post-public hearing communications between Barnard and the PZC are proper because Barnard did not become a party to the zone change proceeding by preparing and signing the application on behalf of the Town, and therefore, was not prohibited from communicating with the PZC about the zone change.
"The zoning authority, acting as a legislative body, may amend or modify ordinances or regulations when the growth and progress of the Town require it, or where it is for the general welfare of the community." (Citations omitted.) Pierrepont v. Zoning Commission, 154 Conn. 463, 468-69, 226 A.2d 659 (1967). A zoning commission, acting in its legislative capacity, has the power to initiate its own proceedings for a zone change. See, e.g., First Hartford Realty Corporation v. Planning Zoning Commission, 165 Conn. 533, 534, 338 A.2d 490 (1973) and D'Addario v. Planning Zoning Commission, 25 Conn. App. 137,140, 593 A.2d 511 (1991).
With regard to the issue of Barnard's ex parte communications, "the receipt, ex parte, of information supplied by a party to the controversy without affording [the opposing party] an opportunity to know of the information and to offer evidence in explanation or rebuttal" is a due process violation against the opponents of the application. Pizzola v. Planning 
Zoning Commission, 167 Conn. 202, 208, 355 A.2d 21 (1974). See also Blaker v. Planning Zoning Commission, 212 Conn. 471,477-78, 562 A.2d 1093 (1989), aff'd on other grounds, 219 Conn. 139, CT Page 4702592 A.2d 155 (1991). However, "the commission is not required to provide an opportunity for rebuttal when it relies on the knowledge and experience of one of its members on nontechnical issues;" Palmisaro v. Conservation Commission,27 Conn. App. 543, 548, 608 A.2d 100 (1992); such as when the chairperson's report to the commission "was merely a summary of his personal observations of the area and what had transpired at the public hearing. . . ." Brookfield Plaza Limited Partnership v. Zoning Commission, 21 Conn. App. 489, 494, 574 A.2d 825 (1990). In addressing the issue of whether the opponents of a zoning change were prejudiced by an ex parte communication, the court must consider the following: whether additional evidence pertinent to the application was requested after the close of the public hearing; Kyser v. Zoning Board of Appeals, 155 Conn. 236,251-52, 230 A.2d 595 (1967); whether "the information requested by the commission was within the scope of the [matters] presented at the public hearing. . . ;" Gardiner v. Conservation Commission, 222 Conn. 98, 103, 608 A.2d 672 (1992); and whether the ex parte communication was from a party to the controversy or from a public official who has no personal or financial interest in the controversy: McCrann v. Town Plan 
Zoning Commission, 161 Conn. 65, 78, 282 A.2d 900 (1971). Even when improper post-hearing evidence is received by a commission, it will constitute harmless error as long as the commission's action "is adequately supported by assigned reasons not based on the allegedly tainted evidence." Frist Hartford Realty Corporation v. Planning Zoning Commission, supra, 545.
In the present case, Barnard participated in the PZC's September 16, 1991 post-public hearing meeting, and her participation was summarized in the minutes as follows:
2. III.1. Amend. #407, Appl. #91-48, Longshore and III.2. Town Plan Amend. #27, Appl. #91-49, Longshore
Mr. Katz stepped down and was replaced by Jon Bullard.
 Mrs. Barnard stated that at the last discussion there was some concern on rezoning that area near the river so she submitted a new plan showing the zone line changed to keep the area near the river in its current zoning except for the existing developed lot and the approved building lot which is currently undeveloped and owned by the Town. Since the area to be rezoned has been decreased the application does not have to be CT Page 4703 renoticed.
 Mr. Balch asked how many 1 acre lots will be available with the change.
Mrs. Barnard estimated that there will be about 9.
 Mr. MacLachlan asked who owns the two lots by the river which were included in the zone change.
 Mrs. Barnard replied that one was privately owned while the other is vacant Town property. The Town land is an existing building lot approximately two acres and is buildable regardless of the zone designation.
 Mrs. Gilchrist asked how many 2 acre lots would be available.
Mrs. Barnard replied that there would be about 5.
 Mr. Mueller asked if the Town lot by the river would be one lot or two.
 Mrs. Barnard replied it would only be 1 since there is a very steep slope and little buildable area.
 Mr. MacLachlan expressed concern about the potential of having four lots fronting on Longshore developed and visible to the public.
(ROR #37, p. 1). The PZC then voted to rezone the subject property into one acre lots. (ROR #37, p. 3).
In the present case, Barnard's comments at the PZC meeting addressed the size of the area that was being rezoned and the number of buildable lots that would be available in a two acre zone and a one-acre zone. The information that Barnard furnished to the PZC was already part of the record and was addressed at the prior public hearing. No additional technical or nontechnical ex parte evidence was presented to the PZC, and thus, there was no need to allow the plaintiffs an opportunity for rebuttal. Further, the PZC may properly rely upon the knowledge and experience of Barnard concerning such nontechnical issues. Also, the plaintiffs do not claim that Barnard has a CT Page 4704 financial stake in the outcome of the application for the zone change and in fact she has none. Accordingly, the court finds that the PZC's decision was proper and the plaintiffs were not prejudiced by any ex parte communications or ex parte presentation of new evidence to the PZC.
Therefore, for all of the above stated reasons, the plaintiffs' appeal from the decision of the PZC to change the zoning designation of a parcel of land owned by the Town of Westport is dismissed.
The court
JOHN P. MAIOCCO, JR., JUDGE