[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
The above-captioned appeal is an appeal from the action of the East Haven Planning and Zoning Commission in granting a zone change affecting 8.3 acres of property and changing the zoning classification from Planned Development District (PDD) to residence 1 (R-1). At a meeting held on March 4, 1992 the commission voted to approve the proposed zone change. Three members of the defendant commission voted in favor of the application. One member voted against the application and one member abstained. At that public hearing an attempt had been made to file a statutory protest in accordance with § 8-3 (b) of the General Statutes. A successful statutory protest would have required a super majority of two-thirds of the commission to approve a change. The commission believed that a protest had been validly filed and that as a result of the protest the application for zone change had been defeated notwithstanding the fact that a majority voted in favor. The action of March 4, 1992 was appealed to the Superior Court. In a June 17, 1993 Memorandum of Decision the court, Licari, J., held that the protest petition had been improperly filed so that the super majority was not required for passage. Because of this holding, Judge Licari sustained the appeal and concluded his Memorandum of Decision with the following language:
 "Since absent a valid protest petition the commission vote was sufficient to pass the application, upon remand to the commission, CT Page 6467 hereby ordered, the application should granted unless some further action is required before the application is granted."
Relying solely on judge Licari's order and the interpretation of that order by the town attorney, the commission on July 7, 1993 declared the subject zone change to be adopted with an effective date of Wednesday, July 15, 1993.
The appellants, neighboring property owners, took the present appeal from the doings of the commission on July 7, 1993. It should be noted that neither the plaintiffs nor the defendants argued the appeal in terms of the validity or finality of Judge Licari's order or the town's response thereto. The appeal, the return, and the briefs raised the question of whether or not the zone change initially granted at the meeting of March 4, 1992 was supported by the record.
The court has examined the court file in the case which led to Judge Licari's memorandum of June 17, 1993. It is clear that in that appeal both parties and Judge Licari were focusing on the question of the legitimacy of the protest petition and the requirement or lack of requirement for a super majority when the three to one vote of approval occurred. The parties do not appear to have raised the issue of the legitimacy of the zone change itself. It is absolutely clear that Judge Licari did not consider any issue in the nature of "spot zoning" or failure to comply with the comprehensive plan in arriving at his decision. It is equally clear that no claim in the nature of claims precluded has been advanced in the present appeal. Since the complaining neighbors believed they had achieved their objectives with the petition, it is understandable that the legitimacy of the zone change itself was never raised before Judge Licari. While it might have been possible in some manner to have raised the validity of the zone change, this court holds that it is appropriate for the court to rule on the appeal in the posture in which the parties have chosen to present it. Accordingly the court finds the issue before it to be whether or not the zone change from PDD to R-1 approved on July 7, 1993 is supported by the record of the public hearing of January 8, 1992.
AGGRIEVEMENT
The court finds that the appellants Stanley Sendewicz, Kathleen Sendewicz, Fitzroy McLeggon, Maureen McLeggon and Ronald CT Page 6468 J. Cavaliere are owners of property located within one hundred feet or less from the property which is the subject matter of the zone change and accordingly the plaintiffs are aggrieved. No question concerning the aggrievement or standing of the plaintiffs was raised at the trial on the matter.
FACTS
The 8.3 acres in question, together with approximately 4 additional acres, had been zoned in 1988 as a planned development district as that term is used in § 26.1 of the East Haven Zoning Regulations. The surrounding area, prior to the rezoning in question in this case, was zoned R-3. The zoning that was approved and is the subject of the instant appeal is R-1. The regulations provide in § 26.1
 "Purpose. Planned development districts may be established by the commission within the shoreline development area delineated on the zoning map and in accordance with procedures herein specified."
Section 26 goes on to outline the procedures for such districts which are essentially districts that allow multifamily housing and condominiums. It appeared to be agreed at the hearing that as a PDD district the maximum density allowed would have been thirty-one units. It was further agreed that the R-1 district allows a unit on 7,200 square feet and the R-3 district allows a unit on 20,000 square feet. The testimony established that if the area in question were zoned R-3, twenty-six dwelling units could be built. Although the developer made clear his intention to build twenty-eight units on the rezoned R-1 area it appears that that zoning designation, subject to the requirements of later subdivision approval, might allow as many as fifty units.
The record establishes that in general this section of East Haven is zoned R-3 requiring 20,000 square feet to build a dwelling. Approximately twelve acres in the midst of this R-3 zone had been rezoned from R-3 to PDD in 1988. The present application would take 8.3 acres of that 12 acres and rezone it once again this time to R-1 requiring 7,200 square feet to construct a dwelling. Although much of the adverse comment at the original January 8, 1992 public hearing was addressed to matters that were not directly before the commission, the general consensus was clearly that the public wished development of the area in question to be CT Page 6469 limited in density. Much of the discussion concerned coastal area management compliance and matters which would have to be revisited at the time of a subdivision application for the land.
The application for rezoning had been referred to the Department of Environmental Protection. The commissioner, as required by CCMA, replied that the application ". . . conflicts with CCMA policies and standards" (R. 12). Further the Coastal Area Management Program Director, Arthur J. Rocque, Jr., found that the density of the proposed plan in an area known to be susceptible to flooding increased the danger for floods and storms and threatened both life and property (R. 12). The director then concluded with a strong recommendation that the application be denied or modified so as to ensure development at a lower density. The court recognizes that the CCMA opinion is advisory only. The court also recognizes that while testimony was introduced that the surrounding zone was primarily 20,000 square foot R-3 in zoning classification there were a considerable number of undersized nonconforming lots in the area. And finally the court recognizes that the commission gave as a reason for its March 4, 1992 vote that "single family subdivision is in keeping with the neighborhood" (R. 6 p. 2). The court finds that there was sufficient evidence in front of the commission, particularly taking into account the commission's own knowledge, to justify a change from PDD to a single family residence zone. However, the court finds no evidence which justifies a change to the 7,200 square foot R-1 zone rather than the 20,000 square foot R-3 zone. In view of the overwhelming testimony that density could be expected to be a problem, and in view of the absence of testimony supporting the increased density flowing from the smaller permitted lot size, the court finds that the zone change is inconsistent with the surrounding residential zone.
Whether one chooses to call the 8.3 acres "spot zoning" or to simply reflect upon the fact that the R-3 zone is not in conformity with the comprehensive plan as represented by existing zoning in the area, the court finds that "spot zoning" refers to a kind of zoning decision which is improper because it: 1) affects an area that is too small, and 2) is for a use that is "out of harmony" with the comprehensive plan. Baker v. Planning and ZoningCommission, 212 Conn. 471, 483 (1989) citing MorningsideAssociation v. Planning and Zoning, 162 Conn. 154, 161 (1972).
It is the holding of the court that the zoning of 8.3 acres on which construction is allowed on 7,200 square feet boarded by a zone which requires 20,000 square feet and a small remaining CT Page 6470 portion of the PDD zone is zoning which is too small and out of harmony with the comprehensive plan as represented by existing zoning. The commission appears to have given undue weight to the developers stated intention to build twenty-eight units. If the zoning ordinance as adopted limited the developer to twenty-eight units, the court would be faced with a very different case. However, while the court in no sense impugns the honesty of the expressed intention of the developer, the twenty-eight unit intention is not binding on the developer and therefore totally irrelevant to the matter before the court. In fact a density is allowed which, in the opinion of the court, is not supported by the record. The appeal is sustained and the change of zone is overturned.
The court by,
Kevin E. Booth, Judge