[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Richard M. Aron [plaintiff or Aron] appeals the decision of defendant Zoning Commission of the City of Norwalk [Commission] approving three applications of defendant SoNo Station Corporation [SoNo] for building zone regulation amendments, zoning map changes and site plan review. Aron appeals the Commission's decisions pursuant to Conn. Gen. Stat. Sec. 8-8. CT Page 7687
The subject property known as SoNo Station Design District "consists of the following lots within District 2: Block 55, Lot 27; Block 55 (formerly Block 56), Lots 24, 27, 21, 1, 2 and 3. Said lots are bounded on the north by Monroe Street; on the east by Chestnut Street; on the South by Henry and Mulvoy Streets; and on the west by Franklin Streets," Norwalk, Connecticut. (Return of Record [ROR] #A-1 Copy of April 24, 1990 letter to Norwalk Zoning Commission from Michael W. Lyons). The property is shown on a map entitled "Area Proposed for Rezoning from Light Industrial #1 and D Residence to SoNo Station Design Districts (ROR #E-2). See Plaintiff's Exhibits B and C.
Aron is the owner of five parcels of land situated on or about Chestnut Street in Norwalk, Connecticut. Parcel one is made up of Lots 5 and 29 of Block 55 in District 2; parcel two is made up of Lot 3 in Block 55 of District 2 and is the lot that is currently zoned as Light Industrial #1 and used by the plaintiff as a parking lot for his operations and is the lot that becomes a part of the SoNo District in phase I of the development, parcel three is made up of Lot 4 of Block 55 in District 2; parcel four is made up of Lots 22 and 26 in Block 55 of District 2, and parcel five is made up of Lot 28 of Block 76 of District 2.
Parcels one, three and four are referred to in the Development. Agreement between the City of Norwalk, Norwalk Redevelopment Agency, SoNo Station Corporation and Starrett Housing Corporation. These parcels are not included in the SoNo District but may be acquired under the agreement and in accordance with applicable law. (See Supp. ROR, IV. C. p. 32)
On April 24, 1990, application number 3-90 M, 3-90SPR and 6-90R were filed by SoNo. Application No. 6-90R requested the amendment of the zoning regulations to create a new section, Sec. 118-506, creating a new zone entitled the SoNo Station Design District. The purpose of the new regulation is to make feasible the proposed SoNo Station project as approved by the Redevelopment Agency and Common Council. (ROR #A-1). Application No. 3-90 SPR requested approval of a site plan for construction of Phase I of a Mixed Use Development at the South Norwalk Railroad Station. ROR #B-3. The development planned is a multifamily development with additional commercial and office space, movie theaters, new railroad station facilities, and a parking garage. (ROR #B-3) Application No. 3-90M requested approval of a zone change for certain designated properties from Light Industrial #1 and D Residence, to SoNo Station Design District. (ROR #C-1) See also, Answer to Complaint, Paragraph 7.
On June 20, 1990, the Norwalk Zoning Commission held a public hearing. (ROR #D-5, Copy of Publisher's Affidavit). After the public hearing testimony was presented in support of and in CT Page 7688 opposition to the applications. (ROR Transcript of June 20, meeting, #D-7)
After the public hearing, and at the request of the Zoning Committee, the staff of the Zoning Commission met with various individuals, including the applicant's representatives and representatives of the plaintiff, and made recommendations to the Zoning Committee of the Zoning Commission. (ROR #B-22)
At a regular meeting held on August 15, 1990, the Commission modified and approved SoNo's applications for building zone regulation amendments, zoning map changes and site plan review and set forth its reasons. (ROR #A-14)
Notice of the Commission's decision was published in The Hour on August 23, 1990. (ROR #D-14) It is from this decision that the instant appeal arises.
At the May 8, 1991 hearing the court heard additional testimony on the issue of confiscation.
JURISDICTION
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Appeals from the Zoning Commission are to be taken pursuant to Sec. 8-8. Conn. Gen. Stat. Sec. 8-9 (rev'd to 1989).
Aggrievement
Section 8-8 provides that "[a]ny person . . . aggrieved by any decision of said board . . . may . . . take an appeal to the superior court. . . ." Conn. Gen. Stat. Sec. 8-8 (a) (rev'd to 1989). Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987).
At the hearing held in this appeal on April 3, 1991, the court ruled from the bench finding that plaintiff Richard M. Aron was aggrieved under both "classical" and "statutory" aggrievement standards.
TIMELINESS
Any person who is aggrieved by a decision of the Zoning Commission may take an appeal to the superior court. The appeal shall be taken within fifteen days from the date when notice of CT Page 7689 such decision was published. Conn. Gen. Stat. Sec. 8-8. Notice of the Commission's decision was published on August 23, 1990 (ROR #D-14). Defendants Robert Dakers, Acting City Clerk of the City of Norwalk, Mary O. Keegan, Town Clerk of the City of Norwalk and James Cunningham, Chairman of the Zoning Commission of the City of Norwalk, were all served on September 5, 1990. Defendant SoNo Station Corporation was served on September 6, 1990. All defendants were served within the fifteen day appeal period. Accordingly, plaintiff's appeal is timely.
SCOPE OF REVIEW
The plaintiff raises numerous issues on appeal to support its contention that the Zoning Commission abused its discretion (legislative as regards the zoning regulation amendment and zoning map change and administrative as regards the site plan review) and acted arbitrarily or illegally.
The Connecticut Supreme Court has stated that:
 . . . . [C]ourts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers.
 Courts must not disturb the decision of a zoning [authority] unless the party aggrieved . . . establishes that the [authority] acted arbitrarily or illegally. [citations omitted]
 The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. [citation omitted]
Burnham v. Planning Zoning Commission, 189 Conn. 261, 266 (1983).
 . . . . [I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. [citation omitted]
 The action of the commission should be sustained if even one of the stated reasons is sufficient to support it.
Id. at 265. CT Page 7690
DISCUSSION
The plaintiff first contends that the Commission abused its discretion and acted arbitrarily and illegally in that the zone change and the zoning regulation amendment that it approved constituted "spot zoning".
The Connecticut Supreme Court has held that:
 "Spot zoning" is the "reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood.""
 Morningside Assn. v. Planning Zoning Board, (162 Conn. 154
(1972)) Supra, 161. Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. Id. The comprehensive plan is to be found in the scheme of the zoning regulations themselves. (citations omitted)
Blaker v. Planning Zoning Commission, 212 Conn. 471, 483 (1989).
 "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." (citation omitted).
First Hartford Realty Corporation v. Plan and Zoning Commission,165 Conn. 533, 541 (1973). Additionally, our Supreme Court in Morningside Assn. v. Planning Zoning Board, 162 Conn. 154, 162,163 (1972) set forth the parameters for review under the second prong of the spot zoning test, as follows:
 Although the petitioner may receive an incidental benefit, so long as the change is in accordance with the comprehensive plan and the central purpose for the change is in benefiting the community as a whole as opposed to the owner of the property, the board cannot be said to have acted unreasonably or arbitrarily and the claim of spot zoning fails. [citations omitted]. . . . Rather, the record discloses that the board acted with the intention of promoting the best interests of the community and its action was, therefore, in harmony with the comprehensive plan.
(citations omitted) (emphasis added).
The SoNo Station redevelopment project was proposed by the City of Norwalk to rebuild the dilapidated South Norwalk Railroad CT Page 7691 Station, to create affordable housing, and to bring "improvements to an area that cries out for development" (ROR #D-9, p. 5). The SoNo Station project has also received support from the state and federal government through grants-in-aid from the state department of transportation and the federal urban mass transportation administration (ROR #D-7, p. 3-4). It is intended to be the cornerstone of a major, long-range city plan for urban revitalization in the South Norwalk area. (ROR #D-2, p. 7)
The zoning regulations at issue affect an area of land of approximately 7.25 acres, which are currently zoned Light Industrial #1 and Residence D. The Commission noted the following objectives in adopting the zoning amendment was the need to "improve the physical appearance of the immediate neighborhood" and "to retain and enhance the established character of South Norwalk by keeping the scale and use of buildings compatible with those on adjacent streets; limiting major traffic flow to nonresidential streets; and installing street improvements (i.e., curbs, sidewalks, street trees, lighting)." (ROR #D-12, p. 7-8)
As our Supreme Court noted in Loh v. Town Plan Zoning Commission, 161 Conn. 32, 37 (1971):
 The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. [citation omitted]
The Return of Record Exhibits D-1, D-2, D-4, D-7, D-8, D-9, D-10, D-11, D-12, and D-13 are replete with evidence that the zone change was in harmony with Norwalk's comprehensive plan and that the Commission acted with the best interests of the community as its paramount goal. The changes were not made primarily for the benefits of the applicant.
Since the two elements of the spot zoning test must co-exist in order to have spot zoning and since the record of the Commission is clear that the change of zone is in harmony with the comprehensive plan to serve the needs of the community as a whole, the zoning regulations in this case cannot be classified as spot zoning. Having so decided, the court need not discuss the first prong of the two part test for spot zoning.
The plaintiff next claims that the parking regulations are contrary to the uniformity criteria of Conn. Gen. Stat. Sec. 8-2. Specifically, plaintiff argues that the parking regulations in the SoNo Station Design District are different from those in other Norwalk zoning districts. CT Page 7692
Conn. Gen. Stat. Sec. 8-2 provides in part:
 All such [zoning commission] regulations shall be uniform for each class or kind of building, structure or use of land throughout each district but the regulations in one district may differ from those in another district, . . . . Such regulations shall be made in accordance with a comprehensive plan. . . . Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. Such regulations shall also encourage the development of housing opportunities for all citizens of the municipality. . . . (emphasis added)
The language of Conn. Gen. Stat. Sec. 8-2 does not support the plaintiff's contention. The statute requires that parking regulations, which are not treated any differently than other land use regulations under the statute, are to be uniform within each zoning district. In this case, the parking regulations are uniform throughout the SoNo Station Design District. (ROR #C-11)
The plaintiff further contends that the SoNo District parking regulations are not supported by appropriate considerations. Conn. Gen. Stat. Section 8-3 (c) provides in part that:
 "[w]henever such [zoning] commission makes any change in a regulation . . . . it shall state upon its records the reason why such change is made."
The record is full of numerous exhibits that provide ample and appropriate support for the district parking regulations for the SoNo District. See especially ROR #A-10, C-15, C-16, C-18, C-19, C-20. See also, ROR #D-12, p. 7, for the Zoning Commission's Resolution adopting the zoning amendment set forth in ROR #C-11, therein one of the stated reasons for the Zoning Commission's action is "to encourage the redevelopment of the South Norwalk Railroad Station so as to achieve the following objective: improve the railroad station and commuter facilities, including parking, intermodal transfer, maintenance and security. . . ." (emphasis added). Courts should not disturb the decision of a zoning commission when acting in a legislative capacity if it is reasonably supported by the record and is not clearly arbitrary or illegal. See Burnham, supra at 267. The reasons assigned by the Commission in this case are reasonably supported by the record and are pertinent to the considerations which the commission is required to apply under the zoning regulations. See Langer v. Planning Zoning Commission, 163 Conn. 453, 460 (1972). An CT Page 7693 examination of the record discloses that after a full hearing the commission reached an honest and reasonable decision, which was consistent with the comprehensive plan.
The plaintiff next contends that redevelopment in the context of this case is not a proper purpose of the zoning power. Conn. Gen. Stat. Sec. 8-2 provides the regulation-making power for zoning commissions. Connecticut General Statutes Sec. 8-124 et seq. provides for the establishment and responsibilities of local redevelopment agencies.
The intent and purposes set forth in both Conn. Gen. Stat. Sec. 8-2 and Conn. Gen. Stat. Sec. 8-24 et seq. are not inconsistent. The zoning commission and redevelopment agency each perform distinct roles in carrying out the responsibilities of local government.
In essence, the zoning commission provides a general plan to control and direct the use and development of property in a municipality and the redevelopment agency provides specific plans for redevelopment of certain property in a municipality, in accord with a comprehensive or general plan (master plan) of the entire community as made by the planning agency of the municipality under Conn. Gen. Stat. Sec. 8-127.
The zoning commission, in this case, has stated the following as one of its reasons for adopting these zoning and map amendments:
 "1. To encourage the redevelopment of the South Norwalk Railroad Station so as to achieve the following objectives:
 — improve the railroad station and commuter facilities including parking, intermodal transfer, maintenance and security
 — utilize station improvements as an anchor to spur economic revitalization in the surrounding neighborhood
 — improve the physical appearance of the immediate neighborhood
 — provide moderate income housing per Section 118-1050, Moderate Income Housing Regulation of the Norwalk City Code."
The Zoning Commission did not establish the urban renewal plan or in any other way function as a redevelopment agency. Since the goals of a specific urban renewal plan may be consistent with the purposes of zoning, those urban renewal goals may be considered by CT Page 7694 the zoning regulations. Therefore, the Norwalk Zoning Commission's action in doing so in this case is clearly legal.
The plaintiff makes numerous claims of discrepancies in the redevelopment plan procedure by the redevelopment agency. The redevelopment agency is a legal district agency and is not a party to this litigation. The question before this court is whether or not the Zoning Commission abused its authority by considering the goals of urban renewal. Plaintiff's claims regarding the procedures of the redevelopment agency are not necessary to the determination of the propriety of the Zoning Commission's actions in this case.
The plaintiff next claims in a general fashion that the Zoning Commission denied the plaintiff due process by taking additional evidence after the public hearing on June 20, 1990.
 "[W]hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. . . ." (Citation omitted.) Id., 207-208. We noted that further planning and zoning commissions are entitled to technical and professional assistance in matters that are beyond their expertise, and that such assistance may be rendered in executive session. Id., 208. We held, however, that "[t]he use of such assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." Id.
Blaker v. Planning Zoning Commission, 212 Conn. 471, 477-478
(1989) citing Pizzola v. Planning Zoning Commission, 167 Conn. 202
(1974).
 [O]nce it has been demonstrated an improper ex parte communication has occurred; a presumption of prejudice arises. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision. CT Page 7695
Blaker v. Planning Zoning Commission, 212 Conn. 471, 480 (1989).
Plaintiff argues that the commission received materials and evidence after the June 20, 1990 public hearing and before the commission's August 15, 1990 vote. In essence, plaintiff contends that three types of actions occurred:
1. Staff assistance was given directly to the commission,
 2. The Department of Code Enforcement wrote to the architects for the applicant advising that the project drawings should be modified as per the comments of code enforcement; and
 3. Meetings between staff, the applicant's representatives and representatives of the plaintiff occurred.
With respect to the first type of actions, under the reasoning of Pizzola v. Planning Zoning Commission, 167 Conn. 202 (1974), the zoning commission was entitled to receive technical and professional assistance from its staff. The use of such assistance, however, cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal.
The plaintiff in his statement of facts cites ROR #C-24, which is a staff memo concerning calculations of parking requirements under the then existing regulations and the proposed regulations. With respect to this memo the plaintiff has not demonstrated that any improper ex parte communication has occurred. There is no evidence that the staff conferred with the applicant to prepare that memorandum. The commission merely received staff assistance which it is allowed to do, even in executive session.
The plaintiff next cites ROR #A-11, which is a memorandum from the senior planner to the Zoning Committee regarding the proposed amendments and map changes to create a new SoNo Station Design District. Here, too, the plaintiff has not demonstrated that any improper ex parte communication has occurred with respect to ROR #A-11.
The plaintiff next cites ROR #D-8, the minutes of the regular meeting of the Planning and Zoning Committee of the Zoning Commission. Since this was a public meeting and the minutes do not disclose any vote to go into executive session or any action in executive session, and the minutes also do not reflect the attendance by either the plaintiff or the applicant at the public meeting nor reference any contact by staff with either party, the plaintiff has not demonstrated that any improper ex parte CT Page 7696 communication has occurred with respect to ROR #D-8.
The plaintiff next cites ROR #A-12, which is a memo from the staff of the Zoning Commission recommending conditions and modifications for the site plan application. In item A of this memo, the staff had been requested at the June 28, 1990 public meeting of the Zoning Committee to locate alternative parking sites for the Corday Factory (the plaintiff's factory) at 11 Chestnut Street. Here, too, even though the concerns of the plaintiff are addressed in this memorandum, the plaintiff has not demonstrated that any improper ex parte communication has occurred with the staff who prepared the memo in ROR #A-12.
The plaintiff next cites the June 12, 1990 public meeting of the Planning and Zoning Committee and the minutes as set forth in ROR #D-19. This was a public and regular meeting of the Planning and Zoning Committee, and the minutes do not disclose any vote to go into executive session or any action in executive session. The minutes do reflect that Attorney Lyons for the applicant was present. Since this was a public meeting to which the plaintiff was also entitled to attend and since neither the plaintiff nor the minutes disclose any improper ex parte communication, the court cannot find anything improper in the applicant's attendance, through counsel, at a public meeting.
With respect to the second type of action, the plaintiff refers to ROR #B-18, wherein the Department of Code Enforcement informs the architect for the applicant to modify its project drawings and data per those comments. Those proposed modifications had come out of a meeting of the Code Enforcement Administrative Committee on June 19, 1990, the day before the public hearing on the SoNo Design District before the Zoning Commission. The requirements of the Department of Code Enforcement would have to be satisfied by the applicant for Site Plan Review, before the issuance of a zoning approval and building permit. A site plan is required under Conn. Gen. Stat. Sec. 8-3 (g) to allow the agency to determine conformity of a proposed building use or structure with specific provisions of the zoning regulations, and it can be turned down only if it fails to comply with requirements already set forth in the regulations, SSM Associates Ltd. Partnership v. Plan and Zoning Commission, 15 Conn. App. 561, 566 (1988). The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. Allied Plywood Inc. v. Planning and Zoning Commission, 2 Conn. App. 506, 512 (1984), cert denied194 Conn. 808 (1984). When a zoning commission acts upon a site plan, it acts in an administrative capacity, See, McCrann v. Town Plan and Zoning Commission, 161 Conn. 65, 77 (1971); Kosinski v. Lawlor.177 Conn. 420, 427 (1979). CT Page 7697
In Pizzola, the court concluded that the [zoning] commission when acting on a zone change in its legislative capacity, improperly requested, after the public hearing had terminated, that the applicant furnish them with a traffic report and then they used that report in connection with their deliberations without affording the opponents of the application an opportunity to examine the report, cross-examine the applicant's traffic consultant who prepared the report, and present evidence in explanation or rebuttal.
In this case, the letter to the applicant did not come from the zoning commission but from the Department of Code Enforcement Administration Committee (CEAC). The request essentially set forth the procedures the applicant was to follow to present its final project drawings and data based on comments made at a CEAC meeting conducted before the June 20, 1990 public hearing on the SoNo District zoning change, map change and site plan. It also informed the applicant how to obtain various project working permits until final Zoning commission action on the site plan. The site plan review application would only be acted upon the Zoning Commission if it approved the zone change to create the SoNo Station Design District.
The nature of the correspondence in ROR #B-18 to the applicant is known, as it is in the form of a letter. It essentially told the applicant the steps it needed to take for code enforcement purposes. There is nothing in that letter which demonstrates or even raises a question as to whether the plaintiff was prejudiced thereby.
With respect to the third type of action — the meetings between staff, the applicant's representatives and representatives of the plaintiff, the plaintiff refers to the minutes of a July 26, 1990 public meeting of the Planning and Zoning Committee in ROR #D-10 and a list of staff recommendations of August 9, 1990 made to the Zoning Committee in ROR #B-22 and a Zoning Committee public meeting on August 9, 1990, as reflected in its minutes in ROR #D-11.
The July 26, 1990 minutes in ROR #D-10 do reflect that Mr. Edward Leary, the Planning and Zoning staff director, met with representatives of the plaintiff, and the applicant "regarding their requirements, preparing a list of sites for parking initially and relocating the building." See also, correspondence dated July 30, 1990, in ROR #C-29 from Mr. Leary to Mr. Aron, the plaintiff, regarding possible sites for the plaintiff to consider during Phase I and Phase IV, if it occurs, which correspondence is carbon copied to a representative of the applicant. ROR #B-22 sets forth in an August 9 memorandum from the zoning staff (Mr. Leary), to the Zoning Commission, the conditions and modifications that are recommended for the SoNo Station, site plan application. These CT Page 7698 eleven conditions are exactly the same as the eleven conditions set forth by this same staff in its earlier memo set forth in ROR #A-12, dated July 12, 1990. Condition 6 which specifically addresses the plaintiff's parking site is also exactly the same in both the July 12, 1990 memo and the August 9, 1990 memo. ROR #D-11 sets forth the minutes of the Planning and Zoning Committees public meeting on August 9, 1990 and do show on page 4 that the staff did meet with representatives of the plaintiff to review potential sites to relocate the parking lost in Phase I of the project. The minutes then show a lengthy discussion of the plaintiff's concerns and the city and the applicant's responses to those concerns.
There is no question here that the staff was instructed to conduct discussions with the plaintiff and the applicant to attempt to address the plaintiff's concerns. Since there had been a public hearing on the proposals on June 20, 1990, "[i]t is fair to say that the very purpose of [that] hearing was to afford an opportunity to interested parties to make known their views and to enable the board to be guided by them [and] [i]t is implicit in such a procedure that changes in the original proposal may ensue as a result of the views expressed at the hearing." Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 567 (1988).
Under the reasoning in Pizzola, supra, the use of staff assistance cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation of rebuttal. Both sets of minutes referred to above refer to discussions by staff with representatives of the plaintiffs and the applicant to address the plaintiff's concerns. Therefore, in this case there were ex parte communications to address the plaintiff's concerns. The minutes do not address whether each party received or inspected all information related to each other's ex parte communications with commission staff to address the plaintiff's concerns. The July 26, 1990 minutes note that Mr. Leary of the Commission's staff met with representatives of the plaintiff and the applicant "regarding their requirements, preparing a list of sites for parking initially and relocating the building." The minutes do not state if the staff met with each party separately or together. The August 9 minutes refer only to discussions with the plaintiff's representatives.
In this case, even if the communications between the Commission staff and representatives of the plaintiff and the applicant were improper, it is at most harmless error because the actions of the Commission are adequately supported by assigned reasons not based on the allegedly tainted communications. See, First Hartford Realty Corporation v. Plan Zoning Commission,165 Conn. 533, 545 (1973). As was noted above, the final staff memorandum of August 9, 1990 setting forth conditions for the site CT Page 7699 plan application which were developed after the ex parte discussions, were exactly the same as those contained in the staff memorandum dated July 12, 1990. In other words, the information provided by those ex parte discussions were merely cumulative; moreover, under the standard in Blaker this court is hard pressed to see how the plaintiff was prejudiced by the zoning staff's ex parte discussions with the applicant to address the plaintiff's concerns.
Again, as distinguished from Pizzola, supra, and Blaker, supra, where the Commission requested or received information from the applicant and those opposing the application were not appraised of the facts on which the board was asked to act, the facts of this case are distinctly different. In this case, the Commission was most concerned with addressing the concerns of the plaintiff. See, ROR #D-8, p. 3; D-9, p. 1-5, D-10; D-11, pg. 4-6; A-12, C-23; C-29; C-30; B-26, p. 2, item 6. The commission requested its staff to try to resolve the plaintiff's concerns with the applicant. Under these circumstances, the court cannot find that the plaintiff was denied fundamental due process nor prejudiced by the staff's ex parte discussions with the applicant to address the plaintiff's concerns.
The plaintiff next claims that the Zoning Commission "predetermined" its actions before the public hearing and therefore, its actions are capricious, unreasonable and illegal and cannot be allowed to stand. This claim is based on communications between the applicants and the zoning staff before the June 20, 1990, public hearing and the execution of a land disposition agreement between the applicant and the redevelopment agency and the city.
To prove pre-determination, it must be shown that the agency members were irrevocably committed to the particular action no matter what evidence was produced. Daviau v. Planning Commission,174 Conn. 354, 358 (1978). "The law does not require that members of zoning commission must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." Cioffoletti v. Planning Zoning Commission,209 Conn. 544, 555 (1989).
Communications between zoning staff and the applicant do not indicate anything more than assistance to the applicant in meeting legal requirements necessary so that the application can be considered by the Zoning Commission. Such communications certainly do not indicate pre-determination, especially since the zoning staff do not ultimately vote on the changes. Neither does the fact that the city had executed a land disposition agreement with the applicant constitute pre-determination. That agreement was approved by the Norwalk Redevelopment Agency and the Norwalk Common Council. ROR #D-7, p. 2. Neither of these entities exercise any of the zoning CT Page 7700 power, and thus no agreement made by them could bind the Zoning Commission, which is a legally distinct entity.
The plaintiff cites Marmah Inc. v. Greenwich, 176 Conn. 116
(1978) to support his claims because the court there found that pre-determination was established where three conditions co-existed; (1) none of the reasons given for denial for a site plan application were valid, (2) the applicant was not given a fair hearing by the commission; and (3) the change in zoning regulations was enacted primarily for the purpose of preventing the property owner from going forward with its contemplated building project. The instant case is easily distinguishable from Marmah, Inc.
 "It is true that if the public hearing were held merely to comply with statutory requirements, with no thought of changing the proposal regardless of what might have developed at the hearing, the action of the commission would be arbitrary and invalid."
Schwartz v. Town Planning Zoning Commission, 168 Conn. 285, 293
(1975).
The record reveals a comprehensive review of the applications. See, ROR #D-8, p. 3; D-9, p. 1-5, D-10, D-11, p. 4-6, A-12; C-23; C-29; C-30; B-26; p. 2, item 6.
The chairman of the Zoning Commission stated at the July 12, 1990 meeting of the Planning Zoning Committee that "he feels it falls on this Commission to look in depth at the kinds of questions — the effects on the neighborhoods, on traffic, on the City; is this how Norwalk is viewed?" See, ROR #D-9, p. 4. The public hearing was held on June 20, 1990, and final action on the applications was not taken until August 15, 1990, with numerous committee meetings in the interim. On August 15, 1990, the vote was not unanimous; the applications were approved by a vote of 5-2 with the chairman of the Zoning Commission voting against the applications. See, ROR #D-13.
An examination of this record and a review of the instances which the plaintiff claims add up to pre-determination just do not compel such a finding.
The plaintiff next claims that the Zoning Commission's decision to adopt new parking regulations in the SoNo Station Design District is not supported by substantial evidence in the record.
As noted earlier,
 . . . . [I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld CT Page 7701 by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. [citation omitted].
 The actions of the commission should be sustained if even one of the stated reasons is sufficient to support it. [emphasis added].
Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983).
In the Zoning Committee's memorandum of August 15, 1990, to the Zoning Commission, wherein the Committee recommends to the Commission that it adopt the proposed amendments for the SoNo Station Design District, the Committee explains the proposed parking regulations as follows:
 The regulations would revise parking space dimensions and standards for various uses in order to allow for the sharing of spaces, including the provision that 100% of the required theater parking could be shared with the commuter parking (835 spaces) where it is demonstrated to the Commission's satisfaction that the theater's needs would occur predominantly during the evenings and on weekends.
See ROR #A-14, p. 2
Additionally, in that same memorandum on page 1, the Zoning Committee noted that its staff had provided the Commission with additional information, including:
 "1. Alternative parking sites in the vicinity of Corday's (the plaintiff's) existing facility;
 2. Alternative relocation sites for Corday if Phase IV is initiated;
 3. Documentation of the adequacy of 1,345 parking spaces to serve the SoNo Station project's various uses, . . . ."
In addition, when the Zoning Commission adopted the zoning amendment and map change, it gave as one of its reasons for its action, as follows:
 "1. To encourage the redevelopment of the south Norwalk Railroad Station so as to achieve the following objectives: CT Page 7702
 — improve the railroad station and commuter facilities including parking, intermodal transfer, maintenance and security. . . ." (emphasis added)
ROR #D-12, p. 7.
The plaintiff appears to repeat his previous argument that the parking regulations are required to be uniform throughout the entire city or that the city has to justify parking specifications by a higher, standard if they are different from other parking regulations in the city. It should be noted, however, that there are different parking requirements in various special zones throughout the city. See, ROR #E-1, Washington Street Design District; Reed-Putnam Design District; Central Business Design District, Marine Commercial Zone; and Mixed-Use Development. Furthermore, the Commission has power to waive up to 50% of the required parking in any zone in the city where certain conditions are met (S118-1221). The case law does not support the plaintiff's position and, as the court found earlier, the new parking regulations are "uniform" where they are required to be, and that is within the SoNo Station Design District.
Without repeating all the record's contents, the court finds that the record is convincingly clear that the proposed parking regulations, though different from ones for other districts in the city, were fully debated and that the record also supports the appropriateness of the adopted parking regulations for this zone. See, ROR #A-10; A-11; C-15; C-16; C-17; C-18; C-19; C-20; C-23; C-30; D-1. See especially, ROR #D-8, p. 2 and D-12, p. 7 for comments by Commission members for the distinct parking requirements for the zone.
The plaintiff next contends that the Zoning Commission's actions impermissibly depend on the actions of a third party, in this case, the developer.
The purpose of the zone and map changes is to permit the redevelopment of the South Norwalk Railroad Station in accordance with the "SoNo Station Plans" as set forth in the development agreement approved by the Norwalk Redevelopment Agency, (ROR #C-11, p. 1). The zoning and map changes enable the redevelopment of the SoNo Station to move forward; they do not by that language require any action on the part of the developer. All uses and structures to be erected need permits subject to site plan review under paragraph B of the Zoning Amendments. (ROR #C-11, B). Obviously, site plan review contemplates the submission of plans by private parties. In this case, the Zoning Commission approved the Site Plan Review filed by the SoNo Station Corporation for Phase I subject to thirteen conditions. See, ROR #D-12, p. 8-10. CT Page 7703
The plaintiff cites two cases to support this claim: Jarvis Acres, Inc. v. Zoning Commission, 163 Conn. 41 (1972) and Wilson v. Planning Zoning Commission, 162 Conn. 19 (1971).
Both of these cases dealt with situations where the changes made by the Zoning Commission were dependent on the actions of another governmental agency over which the Zoning Commission had no authority and that governmental agency had not given reasonable assurances to the Zoning Commission that it intended to carry out those actions.
 "In the absence of some reasonable assurance . . . that provision would be made for the requisite highway and traffic flow changes for the purposes of alleviating traffic congestion, the commission had no authority to change the zone."
Jarvis, supra at 50, citing Wilson, supra.
These cases also note that the Zoning Commission needs to determine that there was "reasonable probability" that actions by other governmental agencies over which the commission had no control would be instituted so as to justify a zoning and map change.
In this case the Zoning Commission did not condition any of its approvals in those new regulations upon the actions of other governmental agencies. Various provisions in the zone and map changes are specifically subjected to Commission approval. The site plan review is subject to numerous modifications and approvals as authorized under Conn. Gen. Stat. Sec. 8-3 (g) and Sec. 8-2.
Also in this case, the third party mentioned by the plaintiff (SoNo Station Corporation) is bound by a contractual Development Agreement with the city and the redevelopment agency. (See, Supplemental Return of Record, F-1, copy of the Development Agreement; and F-2, copy of South Main Corridor Urban Renewal Plan.) State and federal agencies are committing monies to the project. (ROR #D-7, p. 3-4.) Numerous legal and administrative steps have been taken to implement the redevelopment.
This court finds based upon these facts, that sufficient "reasonable assurances" have been given by the developer in this case to justify the zoning and map change approved by the Commission and that, therefore, the actions of the Commission do not impermissibly depend on the actions of a third party.
The plaintiff next contends that the actions of the Zoning Commission constitute an unconstitutional taking of the plaintiff's property. CT Page 7704
Based on the plaintiff's motion for additional evidence, the court granted, in part, his motion and under the reasoning of Troiano v. Zoning Commission, 155 Conn. 265 (1967) allowed additional testimony on the constitutionality of the zone change since "the validity of the legislation [zone change] must be tested by its effects upon the plaintiffs under the facts of this case. . . ." Troiano, supra at 269. See, explanation of the court's decision in May 8, 1991, transcript, p. 2-9. At that hearing on May 8, 1991, the plaintiffs submitted the testimony of Mr. Richard Aron, the plaintiff, and the plaintiff's expert witness, Mr. Michael Gold.
 Zoning regulations, so far as they reasonably promote the public health, safety and welfare, are constitutional even though their effect may be to limit the exercise of private property rights. [citation omitted] An ordinance which permanently restricts the use of land for any reasonable purpose, however, goes beyond permissible regulation and amounts to "practical confiscation." [citations omitted] "Short of regulation which finally restricts the use of property for any reasonable purpose resulting in a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case with consideration being given not only to the decree of diminution in the value of the land, but also to the nature and degree of public harm to be prevented and to the alternatives available to the landowner." [citations omitted] "The financial effect on a particular owner must be balanced against the health, safety and welfare of the community." [citations omitted]. (emphasis added)
Chevron Oil Co. v. Zoning Board of Appeals, 170 Conn. 146, 151, 152
(1976).
 "Unless there is a clear abuse of discretion . . . which results in a unwarranted discrimination against the property owner or an unreasonable deprivation of his property rights, the welfare of the public, rather than private gain, is a paramount consideration." [citations omitted]
Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349,357 (1975).
The Chevron case supra sets forth the two tests used to determine whether land use regulations go so far as to amount to unconstitutional restriction on use of property, namely the practical confiscation test and the balancing test.
As noted earlier, the plaintiff owns six lots and only one CT Page 7705 lot, lot 3, is affected under the zone change. The other lots are zoned Industrial or D-Residential and are not affected by the zone change. The plaintiff presently makes use of that one affected lot for parking. (ROR #D-7, p. 19) At the hearing before the court, Mr. Aron testified that lot 3 has about 26 parking spaces behind a fenced area for security, 1,400 square feet of office space; the second floor of which is used as an apartment for a guard and maintenance person and some of the space below grade is used for document storage. See May 8, 1991, hearing transcript, p. 11. He also testified that the parking lot and the other uses on lot 3 continue to be used like they were before the zone change. See May 8, 1991, transcript, p. 27. The affected portion of the plaintiff's site was previously zoned Light Industrial No. 1 Zone and is now zoned SoNo Station Design District. (ROR #D-14.) The uses currently being made of lot 3 are all allowed uses under the new SoNo District regulations (ROR #C-11). He can still make reasonable improvements and use of the land consistent with the new regulation.
 "Until it appears that the plaintiff has been finally deprived . . . of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation. [citation omitted]
Brecciaroli v. Commissioner of Environmental Protection, 168 Conn. 349,358 (1975).
Therefore, there is no "practical confiscation" in the present case, since the subject property can be use for all of its current uses.
Even assuming the conclusion of Mr. Michael Gold, the plaintiff's appraiser, that the property in lot 3 had been reduced to 70% of its value, from $210,000 to $60,000, as noted on pages 39 and 40 of the May 8, 1991 hearing transcript, this court can not find under the "balancing test" of the Chevron case, supra, that the application of the zoning regulation to the plaintiff's property would be equivalent to confiscation. This court relies on the holding in Brecciaroli, supra at 357, and finds that unless there is a clear abuse of discretion which results in an unwarranted discrimination against the property owner or an unreasonable deprivation of his property rights, which the court does not find based on the record before it, the welfare of the public, rather than private gain, is a paramount and overriding consideration and, therefore, the actions of the Zoning Commission do not contribute an unconstitutional taking of the plaintiff's property.
Finally, the plaintiff contends that the site plan review CT Page 7706 application should fall if the action of the Zoning Commission in approving the zoning and map changes are overturned. Since the court has not overturned those actions and since the record reveals that the Zoning Commission properly found that the site plan complied with the new SoNo District zoning regulations, the approval of the site plan review application stands. See Allied Plywood, Inc. v. Planning Zoning Commission, 2 Conn. App. 506,511-513 (1984).
Where the commission, as shown by the record in this case, appears to have exercised its discretion fairly, with proper motives and for valid reasons, the court should sustain its action and dismiss the appeal. Zandri v. Zoning Commission, 150 Conn. 646,650 (1963).
Accordingly, the plaintiff's appeal is dismissed.
NARDI RIDDLE, J.