[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Planning and Zoning Commission of the City of Groton (hereinafter the Commission) to amend the zoning regulations by adding new uses to its Waterfront Business Residential Zone (hereinafter WBR zone). For reasons hereinafter stated, the decision of the Commission is approved. CT Page 3552
All parties necessary to the action have been joined, all public notices required to have been given have been timely published and no questions concerning jurisdictional defects have been raised or noted except as hereafter stated.
This appeal is brought under the provisions of General Statutes §§ 8-9 and 8-8. Section 8-8 limits appeals to persons aggrieved by the decision appealed from. Pleading and proof of aggrievement are essential to establish subject matter jurisdiction over an appeal under § 8-8. Hughes v. TownPlanning Zoning Commission, 156 Conn. 505, 507 (1968). The parties have stipulated and agreed that plaintiffs, Igor Boris, Suzanne W. Boris, Robert I. Boris, Joan M. Haiss and John Hugh Wallace, Jr. own property within the WBR zone which was affected by the decision appealed from. It is found that such parties are aggrieved and have standing to prosecute this appeal. Summ v.Zoning Commission, 150 Conn. 79, 83 (1962); Cole v. Planning Zoning Commission, 30 Conn. App. 511, 515 (1993). It was also stipulated and agreed that plaintiffs Harry G. Curry, Betty Curry and Sarah McGirr own property which abuts the zone. It is found that these parties are also aggrieved and have standing. Hall v.Planning Commission, 181 Conn. 442, 445 (1980). There is no evidence concerning plaintiff Sherwood Cadorette, therefore, it cannot be found that he is aggrieved or has standing in the case.
The basic facts underlying this action do not appear to be in doubt and may be summarized as follows:
Defendant Garbo Lobster Co., Inc. (hereinafter Garbo), is the owner of a 2.8 acre parcel of land within the WBR zone. Garbo hoped to operate a lobster distribution facility on the property. Since the zoning regulations would not permit this proposed use in the WBR zone, by letter dated May 23, 1996, Garbo, through its attorney, proposed the following amendment to the zoning regulations:
4. The text changes we ask you to approve. 
We ask you to amend the text of Section 314, Waterfront Business Residence Zone, Special Permit Uses, so as to add a new Section 3.14.k, as follows (new language underlined):
3.14.k Principal or accessory buildings and facilitiesfor the storage, distribution and wholesale or retail sale ofCT Page 3553fresh seafood. subject to the requirements of Section 4.15,Supplementary Regulations.
 We would also request the addition of a new Section 4.15 (on page 42), as follows:
4.15 Principal and Accessory Buildings or Facilities forthe Storage, Distribution and Wholesale and/or Retail Sale ofFresh Seafood.
 The storage, distribution or wholesale and/or retail sale of fresh seafood are permitted uses in the Waterfront Business Residential (WBR) zone subject to special permit and site plan approval, and the following conditions:
a. The use shall be water dependent.
 b. No outside storage or handling of seafood or waste products shall be permitted, other than delivery and loading.
 c. No canning, drying or other type of industrial-type processing of seafood shall be permitted.
 d. The use shall be an integral component of a commercial seafood operation, comprised of, but not necessarily limited to, seafood handling, commercial fishing, small marina/boat landing, and such other related and permitted uses.
e. A minimum lot size of 1 acre shall be required.
At its regular meeting of June 18, 1996. the Commission scheduled a public hearing on the proposed amendments for July 16, 1996. On that date, a public hearing was held to consider the proposed amendment. Parties at interest were heard, reports and letters were submitted.
Action on the proposed amendment was tabled by the Commission at its August 20, 1996 meeting. At the regular meeting held on September 17, 1996, the Commission voted to approve the amendments of § 3.14.k and 4.15 as proposed. The vote was four in favor of the amendment with one against approval. One member of the Commission abstained stating that he did not attend CT Page 3554 the public hearing in July. The Commission stated the reasons for its action on the record.
Claiming to be aggrieved by the action of the Commission in approving the amendments, plaintiffs instituted the present action.
In deciding the issues presented by the appeal, the Court is limited in its scope of review by statute and applicable case law. Review of the decisions of local zoning authorities is limited to a determination, principally on the record before the Commission, whether the Commission abused the discretion vested in it. Tazza v. Planning Zoning Commission, 164 Conn. 187, 191
(1972). This court can sustain the appeal only upon determination that the action taken by the Commission was unreasonable, arbitrary or illegal; it must not substitute its judgment for that of the local Commission and must not disturb the decision of the Commission as long as honest judgment has been reasonably and fairly exercised. Baron v. Planning Zoning Commission,22 Conn. App. 255, 257 (1990). Conclusions reached by the Commission must be upheld by the court if they are reasonably supported by the record. Primerica v. Planning Zoning Commission, 211 Conn. 85,96 (1989). The question on review of the Commission's action is not whether the court would have reached the same conclusion but whether the record before the Commission supports the decision reached. Id., 96.
Although the factual and discretionary determinations of the Commission must be given considerable weight, it is for the court to expound and apply governing principals of law. DomesticViolence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 470 (1998).
Plaintiffs have raised four separate issues in support of their claim that the Commission acted illegally. Their claims are:
I. The Commission failed to file copies of the proposed regulations with the city clerk for public inspection as required by General Statutes § 8-3(a).
II. The Commission did not comply with the requirements of General Statutes § 22a-104(e).
III. There was an improper post-hearing ex parte CT Page 3555 communication with the Commission.
IV. The Commission's decision was not supported by substantial evidence in the record.
Each of these claims will have to be considered by the Court in light of the applicable law and the record. The burden rests with plaintiffs to prove the impropriety of the Commission's decision. Burnham v. Planning Zoning Commission, 189 Conn. 261,266 (1983).
 I.
The first issue raised by plaintiffs is a claim that the Commission failed to file copies of the proposed amendments to the zoning regulations with the city clerk for public inspection at least ten days prior to the public hearing as required by General Statutes § 8-3(a). Compliance with the filing and notice requirements of the statute is a prerequisite to valid action by the Commission. Failure to give proper notice constitutes a jurisdictional defect rendering any action taken void. Timber Trails Corporation v. Planning Zoning Commission,222 Conn. 374, 375 (1992).
An examination of the record indicates three documents which bear upon this issue. The first is a memo dated June 25, 1996, from Gregory J. Chiara of the Commission's staff to the office of the city clerk concerning "Proposed Zoning Regulations Amendments, Garbo Lobster Co." The memo informs the clerk that the Commission will hold a public hearing on "the attached proposed amendments" on July 16, 1996, and requests the clerk to make the amendment available for public inspection immediately in accordance with § 3. The second document is a memo dated June 26, 1996, from Mr. Chiara to the Groton town clerk with the same reference. This memo requests the town clerk to make the same proposed amendments available for public inspection prior to the public hearing scheduled for July 16, 1996. The third document is a copy of the Notice of Public Hearing sent to the New London Day for publication on July 2, 1996 and July 9, 1996, by the city planner. This notice informs the public that copies of the proposed amendments were on file and available for public inspection during normal business hours at the offices of the city and town clerks.
Merely because of the existence of these documents in the CT Page 3556 record, the court is not required to find as an undisputed fact that the documents were filed in accordance with § 8-3(a).Harry v. Bidwell, 149 Conn. 93, 97 (1961). These documents in the record, however, do support a conclusion that a copy of the proposed amendment was, in fact, filed with the clerks within the prescribed time in accordance with the statute. Scovil v.Planning Zoning Commission, 155 Conn. 12, 17-18 (1967). "There is a strong presumption of regularity in the proceedings of a public body such as [the] . . . Commission." Murach v. Planning Zoning Commission, 196 Conn. 192, 205 (1985). Where there is no substantial evidence to the contrary, it must be concluded that plaintiffs have failed in their burden of proof that the proposed amendment was not filed for public inspection as required by § 8-3(a). "Public officials are presumed to have done their duty until the contrary appears." Leib v. Board of Examiners forNursing, 177 Conn. 78, 84 (1979).
 II.
The second issue raised by the plaintiffs is that the Commission did not comply with the requirements of General Statutes § 22a-104(e). As it applies to this case, the statute provides that where there is a proposal to change zoning regulations affecting an area within the coastal boundary the Commissioner of Environmental Protection must be notified at least 35 days prior to the public hearing on the change so that the Commissioner may make comments and recommendations. The statute also provides that "(s)uch comment shall be read into the record of the public hearing and shall be considered by the appropriate board or commission before final action on the proposed changes."
Garbo's property being within the coastal boundary the Commissioner was duly notified by letter dated May 28, 1996, of the proposed change. On July 11, 1996, the Commissioner commented on the proposal by letter of Joan Hoelzel, senior coastal planner.
At the public hearing, Garbo's attorney read into the record only the first page and a portion of the second page of the Commissioner's letter. The portion of the letter read dealt directly with the proposed amendment before the Commission and was generally favorable. The attorney summarized the rest of the letter which covered permits which might be required in the future if the amendment was granted. CT Page 3557
Copies of the letter were available for the public and the Commission had copies which could be considered by it as required by statute.
Plaintiff claims that the failure to read the entire letter into the record as required by § 22a-104(e) was a procedural defect which invalidated the action of the Commission approving the amendment. No authority is cited for this proposition.
The initial question presented is whether or not the statutory requirement that the Commissioner's letter be read into the record of the public hearing is mandatory or merely directory.
In general, the word "shall" as used in a statute such as § 22a-104(e) is mandatory and not directory. Langan v.Weeks, 37 Conn. App. 105, 121 (1995). "Use of the word `shall,' however, does not always indicate that the clause is mandatory. . . . The determination must focus on `whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance, or a matter of convenience. . . . If it is a matter of substance, the [regulatory] provision is mandatory . . . If, however the provision is designed to secure order, system and dispatch . . . it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a [regulatory] provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply.'" (Citation omitted.)Lauer v. Zoning Commission, 44 Conn. App. 542, 547 (1997) (Reversed on other grounds, 243 Conn. 485 (1998); Leo Fedus Sons Construction Co. v. Zoning Board of Appeals, 225 Conn. 432,440 (1993).
Applying the analysis of the above-cited cases, it must be concluded that the statutory requirement that the comments and recommendations of the Commissioner be read into the record of the public hearing is directory rather than mandatory. First, there is no negative provision in the statute. There is nothing in the statute which would invalidate any action of the Commission if the comments and recommendations were not read into the record of the meeting. Secondly, the reading of the comments and recommendations is not the essence of § 22a-104(e). The essential provisions of the statute are those which require CT Page 3558 notification to the Commissioner of Environmental Protection and consideration of his comments and recommendations by the Commission.
Although the conclusion that the reading of the Commissioner's letter into the record of the public hearing was directory rather than mandatory is dispositive of this issue. A review of the record that the statute was substantially complied with and reversing the decision of the Commission under the circumstances of this case would be an impermissible exhortation of form over substance. "[C]ourts must be scrupulous not to hamper the legitimate activities of civil administrative boards by indulging in a microscopic search for technical infirmities in their [actions]." Frito-Lay. Inc. v. Planning ZoningCommission, 206 Conn. 554, 573 (1988).
 III.
The third claim raised by plaintiff is that an improper ex parte communication was made on behalf of Garbo after the close of the public hearing.
Due process requires that a public hearing be conducted with fundamental fairness, 405, Tondro, Conn. Land Use Regulations, 2d Ed. In Pizzola v. Planning Zoning Commission, 167 Conn. 202,208 (1974), the Supreme Court upheld a decision sustaining an appeal from a decision of a planning and zoning commission where ex parte traffic reports were supplied by a party to the controversy, after the public hearing without affording the opposition an opportunity to know of the information and to offer rebuttal. Id. Blaker v. Planning Zoning Commission,212 Conn. 471, 476-480 (1989), dealt with the receipt of an improper post-hearing communication on a procedural question. In that case, the court held that where an improper ex parte communication has occurred, a presumption of prejudice arises placing the burden of showing that the prohibited ex parte communication has not prejudiced the party seeking to invalidate the Commission's decision. Id.
The record indicates that at the conclusion of the public hearing on the proposed amendment on July 16, 1996, the Commission voted unanimously to table further action on the matter.
Sometime after the meeting, Michael Murphy, the city planner, CT Page 3559 must have called Keith B. Neilson, Garbo's engineer, concerning the limited number of commissioners who might be in attendance at the Commission's August meeting. In response to the call, Neilson, by letter dated August 20, 1996, wrote to Murphy acknowledging the call and asked that Murphy request the Commission to table action on the amendment until the September meeting "so that it can receive a favorable review by the entire Commission." In asking Murphy to make the request, Neilson acknowledged the impropriety of his communicating with the Commission while the amendment was being deliberated.
This letter is stamped as having been received by the office of the city planner on August 23, 1996.
The August meeting of the Commission was held on August 20, 1996. The minutes of that meeting reflect the following action:
 4. Proposed Zoning Regulations Amendments, Sections 3.14k and 4.15 (Garbo Lobster Co., Applicant.)
Staff stated that applicant anticipates this issue to be resolved at September meeting.
Motion to TABLE made by Frankopoulos, seconded by Orkney.
VOTED: UNANIMOUS
Plaintiffs claim that Neilson's letter of August 20, 1996 was an improper post-hearing ex parte communication. Garbo's attorney denies this since Neilson did not directly communicate with the Commission.
The record, however, clearly indicates that the letter could not have played any part in the meeting held August 20th, three days prior to its receipt by Murphy's office on August 23rd. It is logical to conclude that the planner was concerned about the number of commissioners who would be in attendance at the August meeting. He communicated this concern to Neilson who must have felt that a continuance of the vote until the September meeting would be appropriate. Neilson, who did not initiate the contact, and who was concerned about ex parte communication with the Commission, simply confirmed the conversation by letter.
Although Garbo contends that there was no communication with the Commission, the staff comment "that the applicant anticipates CT Page 3560 this issue to be resolved at September meeting" indicates that Murphy or his office was relaying Neilson's position on the issue.
The communication here, however, is a far cry from that found in Pizzola v. Planning Zoning Commission, supra, 167 Conn. 202, where the commission solicited a traffic report. It also differs from the situation presented in Blaker v. Planning ZoningCommission, supra, 212 Conn. 471, where the attorney for the applicant submitted a letter disputing calculations which could affect the number of votes required for approval of his client's application.
In the present situation, the communication was on a purely procedural matter and was initiated not by Garbo, or anyone on his behalf, but by the planner. Murphy could easily have communicated any concern which he may have had about taking action at the August meeting directly to the Commission at that meeting without involving Neilson. It is difficult to comprehend how Murphy's involving Neilson caused any prejudice to the plaintiffs.
A review of the record concerning those commissioners eligible to vote on the amendment is also helpful in determining whether or not plaintiff suffered any prejudice on account of the communication. Although the minutes do not list those members in attendance at the public hearing held July 16, 1996, the transcript reveals those participating were Chairman Buermeyer and members Dodd, Jenkins, Orkney, Streeter and Frankopoulos. These commissioners would be entitled to vote on the amendment.
The minutes of the meeting of August 20, 1996 indicate that those present were Jenkins, Chairperson, Frankopoulos, Jones, Streeter and Orkney. Buermeyer was absent.
At the September 17, 1996 meeting, Jenkins, Frankopoulos and Streeter voted in favor of the amendment together with Dodd who was not present at the August meeting. The only commissioner voting against the amendment was Buermeyer who was not present in August. Jones, who was not present at the public hearing, abstained from voting on the amendment.
With only one person voting against the amendment, it is difficult to believe that the vote would have been different if taken on August 20th. It is logical to conclude that the CT Page 3561 commissioners would have remained consistent in their vote. The only variable would have been Orkney. He could have voted in August and was not present in September. In August, he supported Frankopoulos in the motion to table.
Under the circumstances of this case, it must be concluded that the ex parte communication was of marginal importance and caused no prejudice to plaintiffs. Blaker v. Planning ZoningCommission, supra, 212 Conn. 471.
 IV.
The fourth claim raised by plaintiffs is that the Commission's decision to amend the zoning regulations were not supported by substantial evidence in the record.
A zoning commission, when amending zoning regulations, acts in a legislative capacity which gives it very broad discretion and the Court on appeal should not substitute; its judgment for that of the commission unless the appellants prove that the commission's action was clearly arbitrary or illegal. Burnham v.Planning Zoning Commission, 189 Conn. 261, 266 (1983). A zoning commission has broad discretion when it acts within its prescribed legislative powers. First Hartford Realty Corporationv. Planning Zoning Commission, 165 Conn. 533, 540 (1973). The question on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record before the Commission supports the decision reached. Burnham v. Planning Zoning Commission, supra, 189 Conn. 265.
When exercising its legislative function, however, a commission's discretion is not wholly unfettered. Woofbard v.Zoning Commission, 147 Conn. 30, 32 (1959).
The Court must review the commission's action in amending the zoning regulations for the required consistency with the comprehensive plan. First Hartford Realty Corp. v. Planning Zoning Commission, supra, 165 Conn. 541.
In approving the amendment to the regulations, the Commission gave the following reasons for their action:
 1. Said zoning amendments are consistent with the purposes of the WBR district in that they will encourage development of a water-dependent use within the District. CT Page 3562
 2. Said zoning amendments are consistent with the City Plan of Conservation and Development, effective October 1, 1996, and the Connecticut Coastal Management Act.
 3. Said zoning amendments contain sufficient safeguards to protect the health, safety and welfare of the adjacent residential neighborhood.
The action of the commission must be upheld if any of the reasons given for it by the Commission are valid, reasonably supported by the record and pertinent to the consideration which the commission was required to apply under the zoning regulations. Burnham v. Planning Zoning Commission, supra,189 Conn. 265.
In the presentation before the Commission, Garbo combined testimony concerning the proposed amendment to the zoning regulations which is the subject of this appeal with information concerning Garbo's intended use of the property. This latter information is relevant only as it might illustrate what might be allowed in the WBR zone after the amendment and the granting of a special permit. The amendment is broader than Garbo's proposed operation. For example, the testimony concerning Garbo's intended use deals only deals with lobsters. The amendment, however, is broader and covers all fresh seafood.
Section 3.1 of the zoning regulations covers the WBR zone. The purpose of the zone is defined in § 3.11 as "to encourage a mixture of land uses that will enhance the unique quality of the Thames Street area with emphasis on waterfront access and water dependent and related uses and retention of the historic character and scale of `Groton Bank.'" The development objectives of the zone are set forth in § 3.12. The objectives expand on the purpose stated in § 3.11 and include a requirement that development be consistent with the Plan of Development and a study of the area. Subsection d of § 3.12 states that "water-dependent uses are specifically encouraged to locate along the river as primary uses or in combination with other permitted uses."
The Plan of Development effective October 1, 1980, appears to have been updated to November 22, 1983. This plan contains broad concepts of the policies, goals and standards for the development of the City of Groton. CT Page 3563
The plan takes note that the high ratio of shoreline to area forces consideration of both land and water in the development of the city. The plan encourages the use of waterfront and for purposes of water related activities but states that waterfront in areas of residential use should be limited to uses compatible with residential uses. A detailed section on coastal policies and recommendations is also found in the document. The plan also stresses that its recommendations are advisory and not binding.
The first reason cited by the Commission for approving the amendment was that the amendment was consistent with the purposes of the WBR district in that it would encourage development of a water-dependent use within the district.
 `Water-dependent uses' means those uses and facilities which require direct access to, or location in, marine or tidal waters and which therefore cannot be located inland, including but not limited to: Marinas, recreational and commercial fishing and boating facilities, finfish and shellfish processing plants, waterfront dock and port facilities, shipyards and boat building facilities, water-based recreational uses . . . and uses which provide general public access to marine or tidal waters. (Emphasis in original.) General Statutes § 22a-93 (16). DeBeradinis v. Zoning Commission, 228 Conn. 187, 200 (1994).
There is evidence in the record which amply supports the conclusion that the amendment would encourage water-dependent uses within the WBR zone. For example, the revision of § 4.15 specifically requires that the new use "shall be water dependent," and that an integral component of a commercial use should include "commercial fishing, small marina/boat landing and such other related and permitted uses."
In describing his potential use of the property, Garbo stated that he anticipated purchasing lobsters over the dock from local fishermen and that he would rely on seawater for lobster storage tanks.
The second reason given by the Commission for approving the amendment was that it was consistent with the "City Plan of Conservation and Development of October 1, 1996" and the state Coastal Management Act. Plaintiff contends that the record does not support these conclusions of the Commission. They also argue CT Page 3564 that there has been no compliance with General Statutes §8-3a(a) which requires that the Commission state on the record its findings on consistency of the amendment with the plan of development.
It must be found that finding of consistency stated on the record complies with the requirement of § 8-3a(a) and the record supports this conclusion.
The plan of development is a broad based plan containing recommendations for the future development of the city. It seeks to produce a harmonious relationship between water uses and land uses. This differs from the comprehensive plan which is found in the scheme of the zoning regulations themselves and the zoning map. Burnham v. Planning Zoning Commission, supra,189 Conn. 267.
Plaintiff cataloged a number of items which they claim are inconsistent with the plan of development. They claim the amendment will increase truck traffic but the record shows that such traffic can be restricted to existing routes. They argue that the amendment would allow operations which would be inconsistent with small scale commercial and residential uses contemplated in the plan of development. The record, however, shows that a restaurant and bar previously on the premises was the source of much more interference with residential and small commercial uses than the special permit uses allowable under the amendment.
The record supports the conclusion that the water related uses are allowable under the amendment under both the plan of development and the comprehensive plan.
Plaintiffs argue that in approving the amendment, the Commission relied upon the plan of development to become effective on October 1, 1996, and not on the plan then in existence. As previously noted, the record supports a finding that the amendment was in compliance with the Plan of Development of October 1, 1980, as updated. If we assume that the reference to the 1986 plan was in error it was appropriate to examine the record to determine that the record supports the action taken under the previous plan of development. Stankiewicz v. ZoningBoard of Appeals, 15 Conn. App. 729, 732 (1988), affirmed211 Conn. 76 (1989). CT Page 3565
The Commission's considering the plan of development which would supercede the previous plan in the immediate future cannot be found to be unreasonable. "[C]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their [actions]." Frito-Lay, Inc. v. Planning ZoningCommission, supra, 206 Conn. 573. Id. "Such caution is particularly appropriate when reviewing the decision of a local land use commission composed of laypersons whose procedural savoir-faire may not rise to the sophisticated level needed to achieve strict compliance with the statutory directions under which they operate." DeBeradinis v. Zoning Commission, supra,228 Conn. 199 n. 7.
In addition, the letter dated July 11, 1996, from Joan Hoelzel, senior coastal planner, previously discussed, which was submitted to the Commission under the provisions of General Statutes § 22a-104(e), specifically states that the proposed amendment would be consistent with "the City's current Plan of Development and its recently proposed update."
Plaintiffs contend that the amendment was not in compliance with the Connecticut Coastal Management Act (CCMA). The record, however, does show that the Commission considered the Act as required by § 22a-104(e). Senior coastal planner Hoelzel's letter of July 11, 1996, filed on behalf of the Commissioner of the Department of Environmental Protection contains an analysis of the proposed amendment in light of the requirements of CCMA and recommends that the Commission approve the amendment.
The third reason given by the Commission for approval of the amendment was that the amendment contains sufficient safeguards to protect the health, safety and welfare of the adjacent residential neighborhood. This reason is also supported by the record.
Plaintiffs have expressed fears that the amendment will result in excess noise, odors, unusual working hours and other problems which will disrupt the area. The record does not support these fears. The regulations are designed to protect the health, safety and welfare of people within all zones.
For an operation, such as Garbo proposes, under the amendment, a special permit would have to be obtained and the state and federal permits described in senior coastal planner CT Page 3566 Hoelzel's letter would be required.
Also, the amendment itself contains restrictions designed to prevent undesirable and odoriferous uses.
From a review of the record, it cannot be found that in amending the regulations, which are the subject of this appeal, the Commission acted arbitrarily or illegally.
Accordingly, the action of the Commission appealed from is approved.
Joseph J. Purtill Judge Trial Referee